PORTER *vs.* HAVENS and ABBOTT, executors, &c.

An agreement between B. and G. H. recited that certain promissory notes were to be executed by G. H. and P. H. to B. and placed in the hands of T., to be held by him until certain criminal prosecutions against G. H., then pending, should be " discontinued and ended," and then the notes were to be delivered by T. to B. A further condition on which the notes were to be delivered to B. was that he should not arrest G. H., or cause him to be arrested, on any process whatever, but should cease all proceedings against him. Notes were executed in pursuance of this agreement, and put into the hands of T. In an action thereon, by a subsequent holder; *Held* that in effect both agreements were similar, and that the object and intent of both was to obstruct the course of justice, for a pecuniary consideration.

That they implied that B. should drop the criminal prosecutions, so far as he was concerned; that he would not appear against G. H.; and that he would, if possible, cause the criminal proceedings to be brought to a close. And that it was therefore a contract forbidden by law, and immoral and corrupt upon its face.

*Held also*, that this being the plain meaning of the contract, upon its face, it was not open to explanation by parol. That hence parol evidence to show that there was no agreement or understanding to suppress or withhold evidence on the trial, or to put an end to the indictments; or that the consideration was not for such a purpose, nor to compound a felony or criminal offense, or do any other unlawful act, was inadmissible.

*Held, further*, that evidence of the subsequent action of the parties — as that B. did not put an end to the indictments — was inadmissible; the vice of the transaction lying in the corrupt *intent*, and not merely in its successful accomplishment.

And that the facts being undisputed and uncontradicted, there was no error in the judge directing a verdict for the defendant, and refusing to submit the evidence to the jury to determine the question of fact, whether the notes were given to settle or a compound criminal offense, or for any unlawful consideration.

THIS action was brought against Peter B. Havens, in his lifetime, and he having died, his executors were substituted in his place. The trial was had at the Rensselaer circuit, before Justice GOULD, in February, 1860, and resulted in a verdict for the plaintiff. The cause came to the general term upon exceptions taken at the trial, and ordered to be heard in the first instance at the general term. The action was upon two promissory notes for $200 each, both dated May 10, 1855, and payable, one in one year and the other in

two years from the date thereof, executed by the deceased defendant, Peter B. Havens, with one George F. Havens, jointly and severally, payable to the order of Asa T. Barron, and by him indorsed to the plaintiff. The notes were executed at Woodstock, in the state of Vermont. The defense was that the consideration of the notes, in whole or in part, was the compounding or settlement of, and an agreement not to prosecute, certain criminal proceedings then pending against the said George F. Havens (the son of the defendant Peter B. Havens) in the state of Vermont, that is to say, an indictment for obtaining money under false pretenses, in the county court of Windsor, Vermont; and an indictment for adultery, in the county court of Washington county, Vermont.

The facts of the case were undisputed, and were substantially as follows: The indictment against George F. Havens, (who was a resident of Ogdensburgh in the state of New York,) for adultery, was found in September, 1853. The one for false pretenses, in December of the same year, and were both pending and not disposed of on the 10th day of May, 1855. On that day the said George F. Havens, being imprisoned at Woodstock, in Windsor county, Vermont, by virtue of process on one of the indictments, executed with his father, Peter B. Havens, the defendant, the notes in question. George F. Havens, as was admitted on the trial, then owed Barron the sum of $2400, being the balance of certain claims growing out of business transactions between them. The two notes in suit, and two others for $200 each, amounting in the aggregate to the sum of $800, all executed by George F. and Peter B. Havens, together with the notes of George F. Havens individually, to the amount of $500, in all amounting to the sum of $1300, were given and accepted by Barron in full settlement of this indebtedness of $2400, and of " all claims and demands," &c. as appeared by the receipt, under and pursuant to a certain contract between said Barron and George F. Havens, bearing date the same day, to wit, the 10th day of September, 1855; which contract, it

was claimed by the defendant, upon its face furnished the evidence of the illegal consideration, viz. compounding and agreeing not to prosecute a criminal offense. It was set forth verbatim, in the case and exceptions, and recited that the aforesaid notes were to be executed and placed in the hands of Andrew Tracy, of Woodstock, to be held by him "until the criminal prosecution against the said George F. Havens, now pending in Windsor county court, and the criminal prosecution now pending in Washington county court, shall be *discontinued and ended,* without any further trouble or expense to the said George F. except such fees as he may be liable for, to counsel," and then to be delivered by Tracy to Barron, upon his executing and delivering to Tracy, for said George, a full and sufficient discharge of all claims of himself against said George, and a like discharge from Lorenzo Richmond, of all claims which Richmond, as *sheriff,* or otherwise, had against said George. "A further condition upon which the notes are to be delivered to the said Barron by the said Tracy is, that the said Barron shall *not arrest or cause to be arrested the said George F. on any process whatever, but shall cease all proceedings against him the said George F."*

It was admitted, on the trial, that at the time of making the contract and notes, Barron had *civil process* issued to and in the hands of the sheriff of Windsor county (where George F. Havens was then imprisoned) for the arrest of George F. Havens under the statutes of Vermont, which were in evidence, in five different suits against him, brought by Barron to enforce the above indebtedness of $2400. The notes were, pursuant to said written contract, placed in the hands of Andrew Tracy, Esq. of Woodstock, the attorney and counsel for George F. Havens, on the indictments. Tracy was present at the settlement, and drew the contract. He testified that there was no connection, to his knowledge, between the settlement and the indictments, other than appears in the written agreement itself. And the stipulation in the

contract, that the notes should be put into Tracy's hands, and not delivered to the said Barron until the indictments were discontinued, Tracy testified was made, as he understood it, for the benefit of the defendant Peter B. Havens, (the father of, and surety for, George F.;) the said Peter B. not deeming it any object for him to aid in the settlement of Barron's claims, in case his son George F. should be convicted and sent to states prison, on either of the indictments.

The indictment for false pretenses, in Windsor county court, was demurred to, and the demurrer sustained, and the indictment quashed, after the agreement was executed, and before the notes were delivered, viz. at the May term of the court, 1855. To the indictment in Washington county, for adultery, a· *nol. pros.* was entered, in March, 1856. Barron had not, to the knowlegde of Tracy, any "control over said indictment, nor any power in any way or by any means to cause the same to be discontinued." It did not appear in the case that Barron in any way procured either of the indictments, or had any thing to do either with the finding or prosecution or final determination of the same, otherwise than is to be inferred from the fact that in the indictment for false pretenses, the false pretenses are alleged to have been made to the said Barron, and the money ($500) obtained from him on the strength thereof.

The plaintiff offered to prove (by parol) that the agreement of the 10th of May, 1855, was made and entered into at the request and urgent solicitation of the defendant Peter B. Havens, and not at said Barron's request or suggestion. The defendant objected to this evidence. The court sustained the objection and excluded the evidence, and the plaintiff excepted. The court, on like objection, excluded the plaintiff's offer to prove (by parol) that there was no contract, agreement or understanding, express or implied, between Barron and the defendant or George F. Havens, to suppress or withhold any evidence upon the trial of, or to put an end to, said indictments, or either of them. The

plaintiff again excepted. The court, on like objection, excluded the plaintiff's offer to prove that Barron never did put an end to said indictments, or either of them, but that they were disposed of by the courts in Vermont in the usual course of proceeding, and without the procurement of Barron or any one in his behalf. The plaintiff again excepted. The court, on like objection, excluded the plaintiff's offer to prove that no part of the notes was for compounding a felony or criminal offense, or putting an end to said indictments, or do any other unlawful act. The plaintiff again excepted.

Upon these facts (the notes having been previously given in evidence and the amount proved) the court directed the jury to find a verdict for the defendant; to which the plaintiff's counsel excepted. The court refused the plaintiff's request " to allow the whole evidence so given to be submitted to the jury, to determine the question of fact whether or not said notes, or either of them, were given to settle or compound a criminal offense, or for any unlawful consideration ;" to which the defendant excepted. The jury found a verdict for the defendant.

*Geo. Van Santvoord,* for the plaintiff.

*Mr. Mitchell,* for the defendants.

*By the Court,* HOGEBOOM, J. The material inquiry is, whether the contract in question is upon its face unlawful. The suit is upon notes which were put into the hands of a third party, and not to be delivered nor take effect until the criminal prosecutions then pending against George F. Havens were discontinued and ended. And the payee was also not to arrest George F. Havens on any process whatever, but to cease all prosecutions against him. There was therefore an inducement and consideration to discontinue and terminate the criminal prosecutions, and plainly to accomplish this result the notes were given. The agreement was not in so

many words that Barron should discontinue or terminate the criminal prosecutions, or use his influence for that purpose, which would have been, I think, an immoral and corrupt agreement; but that until the prosecutions were ended, he should not have the notes. I think in effect the agreements were similar, and that the object and intent of both was to obstruct the course of justice, for a pecuniary consideration. A temptation was held out to Barron, to.wit, that he thus procured the responsibility of the defendant in addition to that of the original debtor. Furthermore, Barron was not to arrest, or cause to be arrested, Havens, on any process whatever — of course embracing criminal as well as civil process — and implying that if he escaped or was bailed out from prison, Barron should employ no measures whatever to arrest him, "but should cease all proceedings against him." This implies that he should drop the criminal prosecution, so far as he was concerned — not appear against him — and that he should, if possible, cause the criminal proceedings to be brought to a close. I do not see that any other fair or reasonable interpretation can be given to this language. And if this be its true interpretation, it can scarcely be doubted that it is a contract forbidden by law, immoral and corrupt upon its face. (*Bell* v. *Leggett,* 7 *N. Y. Rep.* 176. *Barton* v. *Port Jackson Plank Road Co.,* 17 *Barb.* 397. *Moseley* v. *Moseley,* 15 *N. Y. Rep.* 334. *Leavitt* v. *Palmer,* 3 *id.* 19. *Nellis* v. *Clark,* 4 *Hill,* 424. *Rose* v. *Truax,* 21 *Barb.* 361. *Steuben Co. Bank* v. *Mathewson,* 5 *Hill,* 249. *Daimouth* v. *Bennett,* 15 *Barb.* 541.)

If this be the plain meaning of the contract, upon it face, then it is not open to explanation by parol. It must be its own interpreter. Hence parol evidence to show that there was no agreement or understanding to suppress or withhold evidence on the trial, or to put an end to the indictments; or that the consideration was not for such a purpose, nor to compound a felony or criminal offense, or do any other unlawful act, was in direct contradiction of the written contract,

Porter *v.* Havens.

or for the purpose of explaining away an illegal intent patent upon the face of the written instrument, and therefore inadmissible.

So, also, evidence of the subsequent action of the parties, as that Barron did not put an end to the indictments, but that they were disposed of without his interference, was but the attempt of an interested party to gloss over a criminal motive and a corrupt agreement by a subsequent refusal to carry out the original intent. The vice of the transaction lies in the corrupt *intent*, and not merely in its successful accomplishment. So, also, the offer to prove that the contract was entered into at the request of the defendant, and not of Barron, was an immaterial circumstance. Which proposed or requested it was of no importance, so long as both were brought into the contract by their free will and consent.

Hence all the plaintiff's offers of evidence, as to which the judge's action is assailed, were properly overruled.

And as the evidence was undisputed and uncontradicted, I perceive no error in the judge directing a verdict for the defendant, and in refusing to submit to the jury for their determination the proper legal construction to be given to a written instrument not equivocal in its terms nor ambiguous upon its face.

I think the motion for a new trial upon the exceptions should be *denied.*

[ALBANY GENERAL TERM, May 5, 1862. *Hogeboom, Peckham* and *Miller*, Justices.]