[NEW YORK SPECIAL TERM, June 3, 1872. *Barrett*, Justice.

---

## HELEN BETTINGER *vs.* JOHN W. BRIDENBECKER.

No valid trust can be founded upon an interest derived from an illegal contract, or established in contravention of the general policy of the law.

On the 1st of February, 1862, the defendant executed an agreement in writing, under seal, by which he acknowledged the receipt of $450, from D., to be held by him as trustee, for the period, in the manner and upon the conditions and trusts therein mentioned, or until the trust was revoked. By this agreement, the defendant promised to invest the money, and pay the interest to the plaintiff annually, and that on the 15th day of July, 1864, the said sum of money should be paid to the plaintiff as her own property ; *provided* that before that time no proceedings should be instituted against D. on account of any alleged injury to the person or character of the plaintiff, either civil or *criminal*, or in her own behalf, or in behalf of the *people ;* and that the plaintiff should execute a release of all demands. It was proved that on the 2d of January, 1862, D. was arrested and held to bail upon a warrant, charging him with the criminal offense of having assisted in pro-

curing an abortion of a quick child, upon the person of the plaintiff, on the 5th of July, 1861. It was claimed that the consideration of the agreement in question was that such criminal proscution should be abandoned, until after the statute of limitations had attached.

*Held,* 1. That this agreement being for the suppression of criminal proceedings which had been instituted against D., tended to obstruct and interfere with the administration of public justice and of the laws, and was utterly void.

2. That the plaintiff could not be permitted to prove, in opposition to the express stipulation of the agreement, that it was not a part of the understanding that the criminal proceedings should be abandoned.

3. That the claim that the contract had been executed could not be supported; the action being brought to enforce it, and for that reason the court could not aid the plaintiff; although it would not by any means assist the defendant, should its aid become necessary to enable him either to execute, or to defeat, the trust. MULLIN, J., dissented.

THIS is an action upon an agreement, made upon a settlement between the plaintiff and one Daniel F. Dygert, by the defendant, to pay to the plaintiff $450, which sum was placed by Dygert in the hands of the defendant, as a trustee, for the use of the plaintiff.

The defense was, that the money sought to be recovered was placed in the defendant's hands upon an illegal agreement, to suppress a criminal prosecution against Dygert for procuring an abortion of a quick child, upon the person of the plaintiff. That Dygert had been arrested, and just before court this money was placed in the defendant's hands to induce the plaintiff not to appear before the grand jury, or prosecute Dygert for the crime.

The issue came on to be tried at the Herkimer circuit, in December, 1864. The plaintiff put in evidence a written agreement, dated February 1, 1862, made by the defendant, under his hand and seal, in these words :

. " This is to certify that I, John W. Bridenbecker, have received of Daniel F. Dygert, the sum of four hundred and fifty dollars, in money, to be held by me as trustee, for the length of time, in the manner and under the conditions hereinafter set forth, to wit:

*First.* The said sum is to be invested by me, according

to my own judgment, so as to yield the best return in legal interest or profit, and the said interest or profit is.to be paid by me to Miss Helen Bettinger, her guardian or heirs, executors or administrators, or upon her order annually, so long as the said sum remains in my hands, and so long as this trust remains unrevoked.

*Second.* On the 15th day of July, 1864, the said sum of money is to be paid to the said Helen Bettinger, her heirs, executors and administrators, as her own property, to hold and to use in her own or their own right; provided, that before the said 15th day of July, 1864, no prosecution shall in any manner or form be instituted against the said Daniel F. Dygert, on account of any alleged injury to the person or character of the said Helen Bettinger, either civil or criminal, or in her own behalf, or in behalf of the people of the State of New York. And provided also, that the said Helen Bettinger shall, at that time, and before receiving said sum of money, make, execute and deliver unto the said Bridenbecker for Daniel F. Dygert, a good and sufficient release of all demands, actions or causes of action whatsoever, existing in her favor, and against the said Daniel F. Dygert, at the date thereof.

In witness whereof I have hereunto set my hand seal, this the 1st day of February, 1862." (Signed by the defendant.)

The defendant proved that Dygert was arrested January 2, 1862, on a justice's warrant, issued on the complaint of the plaintiff, for procuring an abortion of a quick child, on the plaintiff, at Ilion, Herkimer county, July 5, 1861; that Dygert was bailed by the county judge on the same day, and discharged. The defendant also proved the execution of a paper by him, at the same time the paper firstly introduced by the plaintiff was executed, which was a counterpart and an exact copy, except that it provided that in case any action, either civil or criminal, for the cause aforesaid, should be commenced before July 15,

1864, either by the people of the State of New York or the plaintiff, then the defendant should repay the $450 to Dygert. To this paper as evidence, the counsel of the plaintiff objected as incompetent and immaterial. Objection overruled.

The plaintiff offered to show that the money was not paid by Dygert under any agreement to compound, settle or compromise any crime or felony, but in settlement of the plaintiff's claim against Dygert for her private damages for breach of promise of marriage and seduction. The defendant objected to this evidence, and the objection was sustained.

The defendant moved for a nonsuit, on the ground that the agreement was illegal and insufficient; that the money sought to be recovered was placed in the hands of the defendant upon an illegal and corrupt agreement, and that the plaintiff showed no right to recover, except through an agreement and transaction, which embraced an unlawful obstruction of a criminal prosecution.

The court sustained the motion, nonsuited the plaintiff, and ordered the motion for a new trial, upon a case and exceptions, to be heard in the first instance at the general term, and that judgment be stayed until the decision of such motion.

*R. Earll,* for the plaintiff

I. The equities in this case are strongly in favor of the plaintiff, and she should succeed, unless the strict rules of law require that she should be defeated.

II. It is not a necessary inference from the paper introduced in evidence by the plaintiff that the money therein mentioned was paid to compound a felony. 1. The paper shows that the consideration upon which the money was paid was a cause of action in favor of the plaintiff, which she was required to release before she could get the money. The proof also shows this. 2. The paper contains no

Bettinger *v.* Bridenbecker.

agreement that any one shall forbear any criminal prosecution, but furnishes evidence that there was no such agreement. 3. At most, it can only be claimed that the money confessedly due the plaintiff should be paid only upon condition that no one did prosecute Dygert criminally for a crime against the person of the plaintiff. In which case, if any part was illegal, it was the condition only, still leaving the money in the hands of the defendant paid to him, upon a good consideration, for the plaintiff. 4. The parties had the right to impose any condition as a prerequisite to the receipt of the money by the plaintiff; and so long as the plaintiff did not agree to anything corrupt or illegal, her ultimate right to the money would not be affected, and she could demand it whenever the condition was fulfilled. 5. The agreement between the plaintiff and Dygert, if any, was not in writing, and there was no evidence that that was corrupt. 6. The rule is well settled that any reasonable construction is to be adopted to prevent a contract from failing by reason of illegality. (*Howden* v. *Simpson*, 10 *Ad. & El.* 793. *S. C.*, 37 *Eng. Com. L.* 249. *Pollack* v. *Gregory*, 9 *Bosw.* 116, 133.)

III. There should have been proof that a crime had actually been committed by Dygert. (*The Steuben County Bank* v. *Matthewson*, 5 *Hill*, 249.) 1. The condition in the paper had reference to some future prosecution, and not necessarily for the crime for which he had been arrested and which is alleged in the answer. 2. The prosecution mentioned in the paper was for an injury to the person or character of the plaintiff, and not necessarily for the crime which is alleged in the answer, and for which he had before been arrested; which was not an injury to her person, but to the quick child. (3 *R. S.* 940, 975, *5th ed.*) 3. The precise illegality relied upon as a defense must be alleged in the answer, and proved as alleged. (*Dingledein* v. *The Third Avenue R. R. Co.*, 9 *Bosw.* 79.)

IV. There is no proof whatever that either the plaintiff

or the defendant was a party to any corrupt agreement. 1. The plaintiff, so far as the proof shows, signed no instrument and made no agreement. She employed an attorney to prosecute Dygert for a good cause of action, and the money was to be paid to her upon a good consideration. She herself has done nothing to defeat her recovery. 2. There is no proof that the defendant was a party to any illegal or corrupt agreement. The money was deposited with him upon a good consideration passing from the plaintiff, and for her benefit. He agreed to nothing except to hold and invest it, and pay it over upon a certain condition imposed by Dygert, and he agreed to nothing else. It is not even shown that the defendant knew that the alleged crime, or any crime, had been committed, or that Dygert had ever been arrested. 3. There is no legal proof even that the plaintiff had ever charged Dygert with the commission of any crime, or that she had anything whatever to do with the arrest. 4. Even if the condition imposed by Dygert was illegal and corrupt, that might be void and no one be bound to observe it, and yet leave the money in the hands of the defendant for the plaintiff. (*Arkwright* v. *Cantrell,* 7 *Ad. & El.* 565. *Nicholls* v. *Stretton,* 10 *Q. B.* 346.)

V. The plaintiff was a minor, and had confessedly a good cause of action against Dygert, and she could not waive it or taint it by any agreement upon her part such as is alleged.

VI. The papers introduced in evidence did not therefore furnish such conclusive evidence that the money was paid upon the illegal and corrupt agreement alleged in the answer, as to preclude the oral evidence offered.

VII. It is only executory agreements, to compound crimes, &c., that are held void. (*Nellis* v. *Clark,* 4 *Hill,* 424. *Moseley* v. *Moseley,* 15 *N. Y.* 334. *Daimouth* v. *Bennett,* 15 *Barb.* 541. *Comyn on Con.* 58, 59.) Such agreements the courts will not aid either party to enforce. But

Bettinger *v.* Bridenbecker.

when the agreements have been executed, the courts will relieve neither party, but will leave them where they find them.

VIII. Here the corrupt agreement, if any, was fully executed. 1. Everything was done by the plaintiff and by Dygert which was to be done to carry it fully into effect. He had deposited the money for her, and she had forborne to prosecute him. 2. The condition upon which the money was to be fully paid had happened, and by the very terms of the agreement, Dygert had no further claim to, or control of, the money. 3. The agreement having been thus fully executed so far as the plaintiff and Dygert were concerned, the defendant held the money merely as the agent of the plaintiff. 4. The agreement having been thus fully executed, and Bridenbecker having no interest in or claim to the money, what right has he now to hold it, or claim it, or interpose this defense?

IX. But if the defendant should succeed in this defense, what will become of the money? 1. Dygert could not recover it of him; and if the plaintiff cannot recover it, he will hold it without having any claim to it and without having parted without any consideration. 2. Suppose, instead of being deposited with the defendant, it had been deposited in a bank to be checked out by the plaintiff subject to the same conditions, could the bank have refused payment and hold and claim the money against her?

X. In order to recover this money, the plaintiff sues her agent. She does not sue Dygert, nor does she sue upon, or seek to recover through, the alleged corrupt agreement with him. And she does not necessarily sue upon the paper given by the defendant, although she may use that paper as evidence. But she may sue for the money in the hands of the defendant, to which her title is complete. 1. Here the plaintiff requires no aid from the alleged illegal transaction to establish her case, and that is the test whether a demand connected with an illegal transaction is

capable of being enforced at law. (*Chit. on Cont. 5th Am. ed.* 657. *Gray* v. *Hook,* 4 *Comst.* 449. *Rose* v. *Truax,* 21 *Barb.* 361. *Buck* v. *Albee,* 26 *Vt.* 184. *Pollak* v. *Gregory,* 9 *Bosw.* 116, 128.) 2. The case of *Porter* v. *Havens,* (37 *Barb.* 343,) which was cited at the circuit for the defense, is not analogous. There the corrupt agreement between the parties was fully proved. The suit was between the parties to that agreement, to reap its fruits. But suppose the money had been placed in the hands of Tracy instead of the notes, as a mere depository, and, after the corrupt agreement had been fully carried into effect by all the parties to it, he had refused to pay over the money, could he have retained the money ?

XI. The instrument and warrant introduced in evidence, considered in connection with the evidence of Wendell. and the circumstances surrounding the transaction, did not furnish a case so clearly against the plaintiff as to leave no question for the jury. Hence the court erred in nonsuiting the plaintiff and refusing to leave the facts to the jury.

*C. A. Moon,* for the defendant.

I. The counterpart, or paper proved by the witness Richardson, was properly received. It was a part of the arrangement, and served to characterize the transaction.

II. The oral evidence, offered, to show that the money was not paid to compound, settle or compromise any crime, but that the same was paid in settlement of the plaintiff's claim for private damages for breach of promise of marriage, was properly excluded. 1. It was an offer substantially, to contradict the written agreement already introduced in evidence by the plaintiff. (*a.*) One of the stipulations of that agreement was, that the plaintiff should not in any manner or form, institute any civil or criminal prosecution against Dygert, either in her own behalf, or in behalf of the people of the State of New York. (*b.*) It was proposed to show that a claim for breach of promise

of marriage and seduction was settled, while the written agreement refers to an injury to the person or character of the plaintiff. 2. The written agreement implied that the plaintiff should abstain from or drop criminal prosecutions. This being the plain meaning of the contract upon its face, it was not open to explanation by parol. (*Porter* v. *Havens*, 37 *Barb*. 343.)

III. The motion for a nonsuit was properly granted. The agreement upon which the action is brought is illegal. It was made to suppress a criminal prosecution or compound a felony. 1. Dygert was recognized to appear at the next court, which sat February 3, 1862; the agreement was made February 1, 1862. The defendant was to pay the $450 to the plaintiff, if no civil or criminal prosecution was instituted, and repay the same to Dygert, if any civil or criminal action was commenced before July 15, 1864, which was five days after the crime could be prosecuted by the statutes of limitation. Such a contract is clearly illegal. (*Porter* v. *Havens, supra*.) 2. It is made an offense, by statute, to compound a felony, or to abstain from any prosecution therefor. (3 *R. S.* 969, *5th ed.*) 3. An agreement to put an end to a prosecution for a misdemeanor, without leave of the court, is illegal. (2 *Archbold's Cr. Pr. and Pl.* 1066, *7th ed.; citing Jones* v. *Rice*, 18 *Pick.* 440; *Barb. Crim. Law*, 216.) 4. "The offense of compounding a crime, created by statute, is undoubtedly confined to the party receiving the money or property, and does not extend to the party paying it." (*Daimouth* v. *Bennett*, 15 *Barb*. 542.) "The bargain and acceptance constitutes the crime." (2 *Arch. Cr. Pr. and Pl.* 1065.) 5. The plaintiff was, therefore, the only person guilty of a violation of the statute. She, being the guilty party, cannot enforce this contract. (*Rose* v. *Truax*, 21 *Barb*. 361. *Moseley* v. *Moseley*, 15 *N. Y.* 334–336. *Nellis* v. *Clark*, 4 *Hill*, 424. 2 *Phil. Ev.* 684, *Edw. ed., and cases there cited*.)

IV. It is clear, from the authorities, that this contract could not be enforced against Dygert. Neither can it be enforced against the defendant. 1. It was an illegal trust. " But no valid trust can be founded on an interest derived from an illegal contract, or established in contravention of the general policy of the law." (*Hill on Trustees,* 70. *Id.* 245.) 2. " Neither a prior debt, or any other good consideration, will support a new contract which is, in itself, contrary to the provisions of the law." (*Leavitt* v. *Palmer,* 3 *N. Y.* 19, 36, 37. *Chitty on Cont.* 683, *mar. pag.* 586, 9th *Am. ed., and cases there cited, n.* 1.) 3. Even if the plaintiff had a cause of action against Dygert for damages, yet, as this was all one transaction between the plaintiff, Dygert and the defendant, part of the consideration on the face of the contract being illegal, the whole agreement is void. The contract was entire. (*Hill on Trustees,* 70, *n.* 2, *and cases cited. Gray* v. *Hook,* 4 *N. Y.* 449, 459. *Decker* v. *Morton,* 5 *N. Y. Sur. R.* 477. *Burt* v. *Place,* 6 *Cowen,* 431. *Rose* v. *Truax, supra. Bell* v. *Leggett,* 7 *N. Y.* 176. *Barton* v. *The Port Jackson Plank Road Co.,* 17 *Barb.* 397. *Comyn on Cont.* 25.) 4. Any contract or security, into the consideration of which the compounding of a felony or the dropping of any criminal prosecution in any part enters, is void. (2 *Arch. Cr. Pr.* 1066. *Barb. Crim. Law,* 216. 1 *Story's Eq. Jur.* 295, 7th *ed., and cases before cited.*)

MORGAN, J. The plaintiff's complaint charges that prior to February, 1862, she had a just and valid claim against Daniel F. Dygert for damages, which he settled at $500 ; that he was to pay $50 down, and the residue to be placed in the hands of the defendant for her use and benefit. That Dygert paid her the $50, and paid to, and placed in the hands of the defendant, $450, for her use and benefit, which sum the defendant agreed to keep and hold as her trustee, and to invest the same for her, and

pay over to her annually the interest and income, and to pay her the principal sum on the 15th day of July, 1864; which he neglected and refused to do, although specially requested.

The answer of the defendant alleges that prior to February, 1862, Dygert was arrested and held to bail for the commission of a felony, viz., in aiding the procuring of an abortion of a quick child upon the person of the plaintiff; and that Dygert paid the plaintiff $50, and put $450 in the defendant's hands to be paid to her, in consideration, among other things, that the criminal prosecution then commenced should be abandoned.

On the trial, the plaintiff produced in evidence an agreement in writing, bearing date February 1, 1862, signed by the defendant, by which he acknowledged the receipt of $450 from Dygert to be held by him upon certain trusts therein mentioned, or until the same was revoked. This agreement promised that on the 15th day of July, 1864, the said sum of money should be paid to the said plaintiff as her own, *provided that before that time no prosecution should in any manner and form be instituted against the said Daniel F. Dygert*, on account of any alleged injury to the person or character of the plaintiff, either civil or *criminal*, or in her own behalf, or *in behalf of the people* of the State of New York. And also provided that the plaintiff should also execute a release of all demands.

The plaintiff also proved that she executed a release, and thereupon demanded the money of the defendant, July 15, 1864. The defendant then proved that Dygert was arrested January 2, 1862, and held to bail upon a criminal warrant charging him with the criminal offense of assisting in procuring an abortion of a quick child upon the person of the plaintiff, at Ilion, July 5, 1861. The defendant then proved, by Thomas Richardson, the execution of another agreement by the defendant to Dygert, upon the same subject, written at the same time, which contained

a further provision that if any action, either civil or criminal, for the causes aforesaid, should be commenced on or before the 15th of July, 1864, either by the people or the plaintiff, then and in that case the defendant engaged to repay the money to Dygert. The plaintiff objected to the reception of this agreement in evidence, but the objection was overruled, and the plaintiff excepted.

The plaintiff produced as a witness Jacob Wendell, who was present at the execution of the two agreements, and offered to prove by him that the money mentioned in the agreement was not in fact paid to compound a felony, but that the sum was paid in settlement of the plaintiff's claim against the said Dygert, for her private damages, for breach of promise of marriage and seduction. This offer was overruled by the court, to which the plaintiff excepted.

The defendant's counsel then moved for a nonsuit, upon the ground that the agreement upon which the action was brought was illegal and void, as against public policy. Which motion was granted by the judge, and the plaintiff's counsel excepted to the decision.

It seems to me that the case is too plain for argument; and that nothing can be necessary to be said to show that one indispensable condition upon which the money is to be paid to the plaintiff, was the successful suppression of criminal proceedings which had already been instituted against Dygert. By the 15th day of July, 1864, it would be too late to indict him, for the three years' limitation would have expired, the alleged offense having been committed at Ilion on the 5th day of July, 1861. This was certainly a contract which tended to obstruct and interfere with the administration of public justice, and of the laws, and it is unnecessary to cite authorities to prove that it is utterly void. No valid trust can be founded upon an interest derived from an illegal contract, or established in contravention of the general policy of the law. (*Hill on Trustees,* 45.) The claim that the contract had been ex-

Bettinger *v.* Bridenbecker.

ecuted cannot be supported.   This suit is brought to en-
force it, and for that reason the court cannot aid the plain-
tiff, although it would not by any means assist the defend-
ant, if its aid should become necessary to enable him either
to execute or to defeat the trust.

It is also quite apparent that the plaintiff could not be
permitted to prove, in opposition to the express stipulation
of the agreement, that it was not a part of the under-
standing that criminal proceedings should be abandoned.

In my opinion, it is too plain to require farther exam-
ination.  (*Porter* v. *Havens*, 37 *Barb.* 343.)   There was
nothing in the second agreement proved that changed the
character of the transaction, and the objection to the recep-
tion of that in evidence was a matter of no consequence
whatever.   Indeed the action cannot be sustained upon
any view of it, unless we are prepared to shut our eyes to
the clearest evidence of a corrupt agreement to suppress
a criminal prosecution.

The motion for a new trial should be denied.

BACON, J., concurred.

MULLIN, J., (dissenting.)   I regret that I am compelled,
by force of authority, to vote for reversal of this judg-
ment.   If a way can be found by which persons guilty of
felony can compound it and the prosecutor receive the
price of the illegal bargain without violating the rules of
law, I very much fear that crime will be committed with
an impunity which it has not heretofore been understood
to enjoy, and with an audacity never before exhibited.
Declaring an agreement to compound a felony illegal and
void between the parties to it and yet giving it effect,
when an agent, stakeholder or other trustee is interposed
between them, is practically to surrender the principle, to
make lawful that which the public safety and the public
morals require should be rendered utterly impossible of

accomplishment. What criminal, with the state's prison or the gallows staring him in the face, will refuse to deposite with an agent of the prosecutor whatever sum the latter may demand, and he be able to pay, to secure the silence of the only person who can bring him to justice? It is true both parties are indictable for entering into such an agreement, yet how very slight is the danger of a conviction where the only persons cognizant of the crime are the accused themselves, and who, if they are shrewd, have carefully obliterated all traces of the unlawful combination, thus enabling themselves to enjoy in safety the fruits of their criminal arrangement.

But the question for us to determine is whether, by the laws of the land, the plaintiff is entitled to recover, and not what the effect of such a recovery may be upon the public or individuals. Where it is doubtful what the law is, upon a given state of facts, it is not only proper but it is the duty of a court to inquire what the effect will be upon the interests of the public, or of individuals, in determining the rules of law which should be applied in the case; but when it is found that the rules are already settled authoritatively, it is the judge's duty to declare the law to be as he thus finds, without regard to consequences, leaving it with the legislature to change the rule, or to some appellate tribunal to reverse the judgment and declare the law as in its judgment it is found to be.

A person standing in the relation to the plaintiff and Dygert which the defendant did, is not, strictly speaking, either an agent or stakeholder, and yet his relation partakes of both, but mostly that of an agent. He is at all events a trustee for both parties until the happening of the contingency when the plaintiff becomes entitled to the money, at which time he becomes the agent of the plaintiff. The defendant, when the day arrived on which the plaintiff became entitled to the money, held it exclusively for her benefit, unless Dygert might even then, upon

Bettinger *v.* Bridenbecker.

notice, have recalled it, and if not paid over have maintained an action for it. Whether such an action would lie it is not material to inquire. It is enough to know that Dygert never has demanded it or forbidden the defendant to pay it over. Were it not for the consequences which are likely to follow the establishment of the right to compound a felony, we could not hesitate to declare the law to be that an agent or trustee to whom money is paid for the use of his principal cannot, in an action brought by the principal, defend himself by showing that the consideration of the agreement under which it was paid to him, was illegal. In *Tenant* v. *Elliott,* (1 *Bos. & Pul.* 3,) the defendant, a broker, effected an insurance for the plaintiff, a British subject, on goods from Ostend to the East Indies on an imperial ship. The ship was lost, and the underwriters paid the amount of the insurance to the defendant, who refused to pay it to the plaintiff, although the underwriters had not interfered. By a statute of the parliament such an insurance was utterly void. The action was for this money, and the plaintiff had a verdict. The defendant applied for an order to show cause why the verdict should not be set aside. A rule was refused. Buller, J., said : " Is the man who has paid over money to another's use to dispute the legality of the original consideration ? Having once waived the legality, the money shall never come back into his hands again. Can the defendant then in conscience keep the money so paid ? For what purpose shall he retain it ? To whom is he to pay it ? Who is entitled to it but the plaintiff?" Eyre, Ch. J., said: " The defendant is not like a stakeholder. The question is, whether he who has thus received money to another's use on an illegal contract can be allowed to retain it, and that not even at the desire of those who paid it to him. I think he cannot." In *Farmer* v. *Russell,* (1 *Bos. & Pul.* 296,) the action was against the defendants as carriers. The plaintiff delivered to the de-

Bettinger *v.* Bridenbecker.

fendants a quantity of counterfeit half pence to be carried to Portsmouth and delivered to a person there, under the name of medals, for a commission to be paid. The defendants were not to deliver the medals until they were paid for them. The medals were carried and delivered and payment received, and the money accounted for, except £13, for which the action was brought. There was some doubt whether the defendants knew the property to be counterfeit coin. There was a verdict for the defendants, with leave to move to set it aside. The doctrine of *Tenant* v. *Elliott* was held to apply, and a new trial was ordered. It seemed to be the opinion of some of the judges that if the defendants had been cognizant of the character of the coin, a different conclusion might have been arrived at. Rook, J., was of opinion that if the plaintiff, in order to recover, proved the illegality of the consideration, he could not maintain the action. But none of the judges concurred with him in this view. Eyre, Ch. J., said " that if it was possible to mix up the original transaction (that is, the one between the defendants and the person at Portsmouth) with the contract on which the action was brought," then he concurred in the conclusions of Rook, J. The other judges held there was no connection between the two transactions, so as to render invalid the contract on which the action was brought, and hence the case of *Tenant* v. *Elliott* applied. (*Hastelow* v. *Jackson,* 8 *B. & C.,* 221.) In *Griffith* v. *Young,* (12 *East,* 513,) the action was brought to recover £40, which the defendant agreed to pay the plaintiff, his landlady, being part of a bonus of £100 which one Pugh agreed to pay the defendant for the good will of the leased premises, which could not be transferred to Pugh without the plaintiff's consent, and it was in consideration of her consent that the £40 was to be paid. Pugh, cognizant of this agreement, paid the £100 to the defendant, who afterwards promised to pay it, and told her to send for it. The

plaintiff was nonsuited, on the ground that the agreement was void, not being in writing. *On motion,* the court set aside the nonsuit. Lord Ellenborough, Ch. J., delivering the opinion of the court, says: " If one agree to receive money for the use of another upon a consideration executed, however frivolous or void the consideration might have been in respect to the person paying the money, if indeed it were not absolutely immoral or illegal, the person so receiving it cannot be permitted to gainsay his having received it for the use of that other." This case was decided in 1810. That of *Tenant* v. *Elliott,* in 1797. But while Lord Ellenborough's qualification of the general rule as to the liability of one receiving money for the use of another, that such money cannot be had when the consideration on which it was paid was immoral or illegal, is wholly at variance with the doctrine of *Tenant* v. *Elliott.* Yet I do not find that the latter case has ever been deemed to be overturned or even shaken by the suggestion in *Griffith* v. *Young.* In *Paley on Agency* (*p.* 62) the principle under consideration is thus clearly and fairly stated : " It is then said that if money have been actually paid to an agent for the use of his principal, the legality of the transaction of which it is the fruit does not affect the right of the principal to recover it out of the agent's hands." (*Chitty on Cont.* 620.)

If the agreement of the agent is supported by the same consideration as that upon which the payment to the agent was made, the contract of the agent would be void, as is that between the principal and the person paying. (*Armstrong* v. *Toler,* 11 *Wheat.* 258.) In the case cited, the goods having been unlawfully imported into the United States by Armstrong and others, were seized, and after seizure Toler agreed to pay the duties demanded by the government, and Armstrong agreed to pay Toler his proportion of the money thus paid. Upon payment by Toler, the goods were released and delivered to Armstrong and

others, and thereupon Toler sued the defendant Armstrong for his proportion of the money thus paid, pursuant to the agreement. The plaintiff recovered, and the defendant brought a writ of error. On the trial, the court charged the jury that when the contract grows immediately out of an illegal act, a court of justice will not enforce it. But if the promise be unconnected with the illegal act, it is founded on a new consideration; it is not tainted by the act, although it is known to the party to whom the promise was made, and although he was the author and conductor of the illegal act. The proposition was thus illustrated: A., during a war, contrives a plan for importing goods on his own account from the country of the enemy, and goods are sent to B. by the same vessel. A., at the request of B., becomes surety for the payment of the duties, and is compelled to pay them, and the question is can he maintain an action on the promise of B. to return this money. Marshall, Ch. J., in examining, in a very able and elaborate opinion, the question thus presented, says: " The case does not suppose A. to be concerned, or in any manner instrumental, in promoting the illegal importation of B., but to have been merely engaged himself in a similar illegal transaction, and to have devised the plan for himself which B. afterwards adopted. * * * The contract made with the government for the payment. of duties is a substantive independent contract, entirely distinct from the unlawful importation. The consideration is not affected with the vice of the importation. * * If A. should become answerable for expenses on account of a prosecution for the illegal importation, or should advance money to B. to enable him to pay those expenses," the court thought this " would constitute a new contract, the consideration of which should be sufficient to maintain an action." After remarking that the defense of a suit brought in consequence of an illegal consideration was lawful, the learned judge proceeds to say: " Money ad-

Bettinger *v.* Bridenbecker.

vanced by a friend in such a case is advanced for a lawful purpose, and a promise to repay it is made on a lawful consideration. The criminal importation constitutes no part of this consideration. * * A subsequent independent contract, founded on a new consideration, is not contaminated by the illegal importation, although such illegal importation was known to Toler when the contract was made, provided he was not interested in the goods, and had no previous concern in the importation."

I have cited somewhat extensively from this case, as it illustrates how the parties to the new or collateral contract must have been connected with the original unlawful one, in order to render such collateral contract void. The same learned judge proceeds to review the English cases which I have cited, and others bearing on the question, and adopts the conclusions arrived at in those cases; so that we have the concurrence of this eminent jurist in the proposition which those cases assert, that when money comes into the hands of a person through or by means of an illegal contract or transaction for the benefit of one of the parties to such illegal proceeding, he cannot defend an action by alleging the illegality of the consideration by means of which it came into his hands.

In the case before us the defendant was not in any manner connected with the illegality of the consideration upon which he received the money. But it is obvious that he was the instrument selected to carry into effect the unlawful arrangement. I was at first disposed to think that this took the case out of the principle of the cases cited, and made it one in which the defendant was really engaged in the unlawful arrangement, and was therefore like the case put by the judge at the trial of *Armstrong* v. *Toler*, of the party sued being consignee of goods consigned with his privity that he might protect and defend them for the owners. In which case the judge held that a bond or promise given to pay advances made in pursu-

ance of such understanding or agreement would be utterly void.

In *Farrier* v. *Russell* (*supra*) the defendants were the carriers of the counterfeit coin, and the money was paid to them for such coin. They were the very instruments by which the crime was committed, and yet they were held liable for the money so received. Rook and Eyre, JJ., were of opinion that if it appeared that the defendant knew of the character of the property he carried, he would be thereby a party to the illegal transaction. But Buller and Heath, JJ., were of the opinion that knowledge of the nature of the property was not material. *Tenant* v. *Elliott* is a case in which the defendant (being the broker who effected the illegal insurance) knew all about it, and yet that knowledge did not relieve him. *Camden* v. *Anderson* (1 *B. & P.* 277) was in its facts precisely like *Tenant* v. *Elliott.*

In *Aleinbrook* v. *Hall* (2 *Wils.* 309) the action was for money lent to pay a bet at a horse race. The plaintiff knew the purpose, as Arnold swore, for which it was borrowed. *Faikney* v. *Reynous* (*Burr.* 2069) was for money loaned, to be used, with the knowledge of the plaintiff, in an illegal transaction.

Upon a careful review of all the authorities, I am constrained to hold that the plaintiff is entitled to recover, and that the defendant cannot avail himself of the illegality of the dealings between the parties to the arrangement by means of which the money came into his hands, as a defense.

I am therefore in favor of setting aside the nonsuit, and granting a new trial, with costs to abide the·event.

New trial denied.

[ONONDAGA GENERAL TERM, October 3, 1865. *Mullin, Morgan* and *Bacon,* Justices.]