BRIG, The (ROWE v.). See Case No. 12,093.

### Case No. 1,868.

### Ex parte BRIGGS.

### In re SMITH.

[2 Lowell, 389.] [1]

District Court, D. Massachusetts. Jan., 1875.

BANKRUPTCY—APPLICATION TO ANNUL DISCHARGE.

1. Where a surety of the bankrupt, upon a bond to dissolve an attachment, paid the debt of a creditor who was opposing the bankrupt's discharge. the only motive of the surety being, by procuring the discharge, to save his own liability on other bonds held by creditors who had not objected, and the bankrupt was not consulted about, or informed of, the payment until afterwards, and had no part at all in it, and had made no promise to repay the amount,—*Held*, this payment was not made by the bankrupt, or in his behalf, under section 29 [Act 1867; 14 Stat. 531], and would not vitiate his discharge.

2. It seems, that any act or neglect of the bankrupt, which, if duly objected and proved, would have prevented his discharge, will be ground for setting it aside, under section 34, as having been *fraudulently obtained*, although such act or neglect may not have been fraudulent in the usual sense.

[Cited in Re Whitney, Case No. 17,580.]

In bankruptcy. C. A. Briggs & Co., creditors of the bankrupt, within two years after the discharge heretofore granted to him, applied to the court, under section 34 of the statute of 1867, to annul the same. They specified five acts as fraudulent within the meaning of that section: three of preference to creditors; one, the failure to keep books of account; and the fifth, that one Tucker, in behalf of the debtor, and he being privy thereto, had, by a pecuniary consideration, induced and procured certain objecting creditors to withdraw their opposition to the debtor's discharge. The applicants had not entered an objection in the case, and alleged that they had no knowledge of any of these acts before the discharge was granted. It was proved that the debtor was a tradesman, and had kept no cash account. Tucker testified that he was surety on three or more bonds to dissolve attachments in suits pending against the debtor at the date of his bankruptcy, in one of which these applicants, and in others the original objecting creditors, were plaintiffs, and he thought there were more, but could not now recollect; that being called on by the attorneys of the then objecting creditors, and being satisfied it was for his interest to do so, he had paid the debts of the objecting creditors, and procured them to withdraw their opposition; that his motive was to protect himself from other bonds, including that given to these applicants; that he had no communication on the subject with the bankrupt before or since, excepting to inform him that he had settled the case; that he paid his own money, and had no promise or expectation of receiving any thing from the bankrupt. The testimony of the debtor confirmed that of Tucker, excepting that he did not know whether he first heard of the payment before or after it was made. [Application denied.]

J. A. Loring and W. E. Jewell, for petitioners.

T. L. Livermore, for bankrupt.

LOWELL, District Judge. Two questions have been argued: 1, Whether the neglect by a tradesman to keep proper books of account is good ground for setting aside his discharge in bankruptcy after it has been granted; 2, Whether payment by a surety of the bankrupt, for his own purposes, to induce a creditor not to oppose the discharge, comes within the prohibition of the statute as a payment by the bankrupt, or "in his behalf." Section 29 [14 Stat. 531]; Rev. St. § 5110.

1. This application is under section 34 [14 Stat. 533], Rev. St. § 5120, which empowers any creditor who desires to contest the validity of the discharge, on the ground that it was fraudulently obtained, to apply in writing to the court, setting forth which in particular of the several acts mentioned in section 29 he intends to give evidence of, and to prove such fraudulent acts, &c. By section 29 the discharge is not to be granted, or, if

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

granted, to be valid, if any of the several acts or neglects therein mentioned are proved against the bankrupt. Now, the question is, whether the discharge is "fraudulently obtained," and is to be set aside, if the particular acts and neglects relied on are not fraudulent, in any usual sense of that word. The neglect to keep a cash-book was certainly not a fraud in itself; and the point is, whether every certificate which might have been successfully opposed, if the creditors had the necessary information to enable them to object, is fraudulently obtained, in the sense of section 34, if it is obtained upon an unfounded presumption or appearance that the debtor is fully entitled to it. The section, as we have seen, seems to say, that any thing which might have been objected at first may be brought up during the two years, provided the creditor was not informed of the facts at the earlier time. Under an English statute which very strongly resembled the first part of section 29, Lord Mansfield expressed himself to be decidedly of opinion that a certificate which ought not to have been granted by reason of concealment might be said to have been fraudulently obtained. Robson v. Calze, 1 Doug. 228. The meaning, I suppose, is, that it was a constructive fraud on the court to obtain a certificate which was not justly due. If this be the true construction of our own statute, some part of the apparent discrepancy in the different clauses disappears; because the constructive fraud would be proved by showing that the discharge was wrongly obtained. Upon the whole, taking all the clauses together, I am inclined to think that they give a creditor the right to set aside the discharge for any acts or omissions which would have been just cause for refusing it in the first instance, and that "fraudulent" is used in an enlarged sense to designate any acts which the statute prohibits. I do not decide this point, because I find upon the evidence that these creditors had knowledge of the neglect to keep books before the discharge was granted.

2. The law of Massachusetts being that the discharge in bankruptcy of the principal debtor, duly pleaded, discharges a bond to dissolve an attachment, the surety, Mr. Tucker, found it for his interest to procure a discharge for the bankrupt. In doing this he was obliged to satisfy those creditors who had made opposition. It is clear that this was the motive of his action, and that it was taken without consultation with the bankrupt, without regard to his interests, and with no promise, expectation, or probability of ever receiving from him any indemnity of any sort. The original objectors may have brought themselves within section 35 [14 Stat. 534], Rev. St. § 5131, which enacts, that if a creditor shall obtain any sum of money, &c., from any person, as an inducement for forbearing to oppose, &c., they shall forfeit double the amount, &c.

But the bankrupt ought not to be deprived of his discharge by a payment made in the way and with the motive proved here. By section 29 the payment must be made by the bankrupt, or in his behalf. Now, I do not intend to say that payment by a friend, actually made in behalf of the debtor, with his knowledge, is not prohibited, nor that very slight evidence would not affect him with participation; but one made behind his back, and for the very purpose, perhaps, of vitiating his discharge, should not have that effect. Such a payment would be a fraud on the bankrupt. This payment was made by the surety in his own behalf. He was under no obligation to treat all attaching creditors alike, nor to take or abstain from any course of action that might serve his own interests. Under the English statute above referred to, it was held that a payment by any one to induce a creditor to sign the certificate, would avoid it. And it may be that an assent of one creditor, so procured, would, under our law, vitiate the discharge, if the action of that creditor had, or might have had, an influence on the others. But that would be on the ground of fraud on those who were so influenced. Lord Eldon twice expressed regret that the law, in his time, had been settled as it was: "It is very hard, but it is settled, that, if a friend or foe of the bankrupt gives money, though the bankrupt was in no degree privy to that transaction, and never would have consented to it, the certificate is void" (Ex parte Hall, 17 Ves. 62); and on another occasion: "I feel it very difficult, upon attention to any principle that has furnished this rule, to support the doctrine that a bankrupt is not to have his certificate, if, though he would abhor such means of procuring it, some too active friend has advanced a sum of money to obtain it" (Ex parte Butt, 10 Ves. 360).

It is entirely clear that Tucker acted neither as a friend nor an enemy of the bankrupt, but simply for his own sake; and not only because our law has a phrase which the English law did not have, namely, that the payment is to be "in behalf" of the bankrupt, but on the ground of justice and fair dealing, which the learned lord chancellor alludes to, I am of opinion that a payment of this sort, distinctly and unequivocally proved not to have been made with the bankrupt's assent, or with any regard to his rights or interests, ought not to avoid his discharge. I look upon this as an exceptional case. If the creditor who was bought by the surety had signed the assent, so that others might be misled; or if the vote of creditors were necessary, and he had joined in it, as in cases of composition; it would be no answer to say that the debtor was innocent; for the rights of others would have been prejudiced, and by illegitimate means. This decision will, therefore, hardly make a precedent for any that is likely to arise after it. One of the allegations of the petition is that the payment

was made with the privity of the bankrupt. This is intended to meet and negative the oath taken by the bankrupt, as required by Rev. St. § 5113, that he has not done, suffered, or been privy to any act, matter, or thing specified by the statute as a ground for withholding his discharge. I am not satisfied by the evidence that the bankrupt was privy to this payment, even in the sense of being informed of the intention to make it before it was made. Whether privity does not, in this connection, mean a little more than knowledge, and include some connection with the act, or some unexercised power to prevent it, may perhaps be questioned. Judgment for the defendant.