In re DIETZ.

(District Court, S. D. New York. November 16, 1899.)

1. BANKRUPTCY—DISCHARGE—BUYING OFF OPPOSITION.

Where a creditor who has filed specifications in opposition to the discharge of a bankrupt is induced to withdraw the same, and suffer the discharge to be granted, in consideration of part payment of his claim made to him by a friend of the bankrupt, it is a fraud upon the act, and ground for vacating the discharge, although done without the procurement or participation of the bankrupt, if he was privy to the arrangement and consented to it.

2. SAME—WITHDRAWAL OF SPECIFICATIONS—NOTICE TO CREDITORS.

Where creditors of a bankrupt file specifications in opposition to his application for discharge, and other creditors rely upon the same as representing their own objections, and instruct their attorneys to co-operate with the attorneys of the objecting creditors in opposing the discharge, all parties being well aware of these facts, and the creditors who have filed specifications withdraw the same, and allow the discharge to pass as unopposed, without notice to the other creditors, the discharge will be vacated and the case reopened on motion of the latter.

In Bankruptcy. On motion to vacate order granting bankrupt's application for discharge.

Joseph Rosenzweig and Stillman F. Kneeland, for the motion.
Max D. Steuer, opposed.

BROWN, District Judge. This is an application to vacate the discharge of the bankrupt granted on July 19, 1899, on the ground that it was corruptly procured by the payment of $200 to an opposing creditor as a consideration for withdrawing his objections to the discharge.

The adjudication was made on the bankrupt's voluntary petition on February 25, 1899. Seven creditors proved claims. Among them was the petitioners' for the amount of $4,029.91 and a claim of Feigenbaum & Schweiger for $1,690.37. Max Schweiger, a partner in the last-named firm, was chosen trustee by the creditors, the present petitioners voting for him. Upon the bankrupt's application for a discharge in April, specifications in opposition to the discharge were filed by Feigenbaum & Schweiger only, although the attorneys

employed by Groen & Bro., petitioners, were instructed to co-operate with the attorneys of Feigenbaum & Schweiger in opposing the discharge. Considerable testimony was taken before the referee to whom the specifications were referred. On the 7th of July a written withdrawal of the specifications was filed with the referee, and thereupon on the report of the referee a discharge was granted on July 19th.

The various affidavits submitted upon the present petition show that Feigenbaum & Schweiger received $200, being about 10 per cent. of their claim, and two other creditors a like percentage, from one Blumberg, a cousin of the bankrupt's wife, for an assignment of their respective claims to him and the withdrawal of the objections to the discharge. The money was first lodged with a depositary, under an agreement made by the attorneys of Feigenbaum & Schweiger, who thereupon withdrew the objections, suffered the discharge to be granted unopposed, on the motion of the bankrupt's attorney, and thereafter received the money as agreed from the depositary.

There is no doubt as to the payment of the money. That appears from the affidavit of Mr. Schweiger himself. But it is contended that the bankrupt neither procured this payment nor had any knowledge of it, and was not in any way privy to it. The bankrupt makes oath to this effect, as thoroughly and as variously as possible. Mr. Schweiger indeed makes affidavit to certain circumstances leading to the contrary inference, as that during the negotiations the bankrupt was seen by him in the elevator coming down from the office of his attorneys, though this is denied by the bankrupt. The whole amount paid by Mr. Blumberg for the assignment of these claims was $500. He had acted previously to some extent as a banker for the bankrupt, and he states that the payment of this money was purely voluntary and as a gift, and as a consequence of his interest in the bankrupt, and his wish to make some use of him, and to rid himself of the annoyance of further examination in the bankruptcy proceeding.

There is no doubt that if the opposition of the creditor is bought off through the procurement or privity of the bankrupt, it is such fraud upon the act as would warrant vacating the discharge, the fact itself being prima facie evidence that the bankrupt was not entitled to it. Tuxbury v. Miller, 19 Johns. 311; In re Douglass (D. C.) 11 Fed. 403, 406; In re Palmer, 14 N. B. R. 437, Fed. Cas. No. 10,678; Blasdel v. Fowle, 120 Mass. 447; Bell v. Leggett, 7 N. Y. 176. The general subject was very fully considered in the case last cited, and it was declared to be

"Of no consequence that the arrangement was made between the creditors of the bankrupt and a third person without the intervention or knowledge of the bankrupt."

All such arrangements are to be condemned, as at variance with the policy of the bankruptcy acts, whether expressly prohibited by statute or not (Smith v. Bromley, 2 Doug. 696), and as injurious to all creditors, because calculated

"To suppress inquiry and to protect fraud and concealment from successful disclosure and development, * * * and to give the bankrupt a benefit

designed for the honest insolvent, and which the fraudulent debtor by sound justice and express provisions of the statute was prohibited from receiving."

In the case of Ex parte Briggs, 2 Low. 389, Fed. Cas. No. 1,868, where a surety of the bankrupt upon an attachment bond paid the debt to a creditor who was opposing the bankrupt's discharge on his own account and wholly without the bankrupt's knowledge or privity, it was held that the discharge was not vitiated. Judge Lowell, however, expressly avers that that was an exceptional case; and he adds;

"I do not intend to say that payment by a friend actually made in behalf of the debtor with his knowledge is not prohibited, nor that very slight evidence would not affect him with participation."

It is not necessary for me to make any ruling in this case on the effect of a withdrawal of opposition procured without any actual or constructive knowledge or participation by the bankrupt. I am not satisfied that such was the present case. Though the verbal protestations are very strong to this effect, the circumstances all point to a contrary conclusion. Not indeed that the bankrupt personally was an active participant, for no doubt he was not; but his prior personal relations to Blumberg, as well as through his wife, the improbability that this sum of $500 would have been advanced by him in the manner stated without the bankrupt's indirect privity, the fact that the money was lodged with a depositary, to be turned over only after the discharge was granted, and the course of practice necessary to procure such a withdrawal and a discharge of the bankrupt through the bankrupt's attorney upon such a withdrawal, show that the transfer of these claims to Blumberg had nothing of the character of a mere purchase of them for what they might be worth, but was a very carefully planned and systematic means for procuring the withdrawal of the opposition, and thereupon the bankrupt's discharge; and such a procedure could not well take place without the privity, concurrence and knowledge of the bankrupt's attorney, as to which nothing appears in the opposing affidavits.

Another circumstance also makes it peculiarly proper that this case should be reopened, namely; that in the conduct of the proceedings, the specifications in opposition to the discharge filed by Feigenbaum & Schweiger were relied upon by the petitioners as representing their own objections and under which their attorneys were acting conjointly. They had no notice of the application for discharge and were not heard. Strictly they were not entitled to notice of hearing since they had not interposed independent objections; but considering the relations of Mr. Schweiger as trustee for all, and the knowledge of all parties of their reliance upon these specifications and participation in the opposition, as shown by the record, good faith requires that the proceedings should be reinstated to the situation immediately prior to the withdrawal.

The order of discharge should be vacated, and the matter remitted to the referee for further hearing in behalf of the petitioners upon the specifications previously filed, which may be adopted by them.