### In re SIEGEL.

### Ex parte QUINTO et al.

### (District Court, S. D. New York. July 19, 1918.)

1. BANKRUPTCY ⟨⟩376—INVESTIGATION BY CREDITORS—LIABILITY OF BANK-RUPT.

Where bankrupt offered settlement, and creditors' committee hired attorney to conduct inquiries into his affairs, without express or implied request of the receiver, but with his knowledge and without his dissent, the bankrupt should not pay, as part of the composition, the fees of the attorney who conducted the investigation.

2. BANKRUPTCY ⟨⟩376—INVESTIGATION BY CREDITORS—LIABILITY OF BANK-RUPT.

Notwithstanding investigation into bankrupt's affairs by attorney employed by creditors' committee, without request, but with knowledge and without dissent of the receiver, benefited the estate, the attorney's fees did not constitute a claim against the estate, payable as part of the bankrupt's composition, since the creditors, in employing him, were volunteers, and an estate in the custody of the court is not in need of voluntary services, but is presumably being cared for adequately.

In Bankruptcy. On motion by Oscar Quinto and others, creditors, to require David Siegel, bankrupt, to repay moneys expended by a creditors' committee on reorganization of the bankrupt's affairs. Motion denied.

The case was this: The bankrupt was adjudicated in the Southern district of New York, and on the 14th day of February, 1918, the first meeting of creditors was held before the referee in bankruptcy. At that time the bankrupt's attorney announced to the referee that the bankrupt offered a settlement of 37 cents in cash and proposed to pay all priority claims and expenses of the proceeding, including $1,000 to the creditors' committee in repayment of the amount paid to its counsel. The creditors' committee represented some 90 per cent. in amount of all the creditors of the bankrupt, and accepted the terms of the composition so offered, upon the understanding that the sum mentioned should be repaid. The committee had paid this sum to an attorney who conducted inquiries into the affairs of the bankrupt and disclosed facts which probably led to the discovery of preferences to some of the creditors. The examination was conducted without the request of the receiver, either express or implied; it took place, however, with the receiver's knowledge and without his dissent. It may be assumed that the results were in some degree beneficial to the estate. Upon applying for a confirmation of the composition, the District Court declined to allow the payment of this sum, and the order was signed without such provision. Thereafter the bankrupt distributed the consideration of the composition in accordance with the order of the court, and has since that time returned the sum of $1,000 to the persons from whom he borrowed it at the time to meet the supposed necessities of the composition. The order of composition itself was signed on April 9, 1918, and this motion was made upon the 25th of June following. At that time the bankrupt did not have the sum in question, and swore that he would be unable to comply with the order of the court for the payment, if made.

David Kahn, of New York City, for the motion.
Maurice L. Shaine, of New York City, opposed.

LEARNED HAND, District Judge. [1] Judge Mayer decided (In re M. & H. Gordon [D. C.] 245 Fed. 905) that a bankrupt might not pay as part of a composition the expenses of a creditor who had employed a public accountant to investigate the bankrupt's affairs. I concur in that case and in its reasoning. Courts have been extremely zealous to secure equality of distribution among creditors, quite independently of whether the added payment to any one of them came from the fund to be divided. Bell v. Leggett, 7 N. Y. 176; In re Dietz (D. C.) 97 Fed. 563; In re Palmer, 14 Nat. Bank R. 437, Fed. Cas. No. 10,678; Ex parte Briggs, 2 Lowell, 389, Fed. Cas. No. 1,868. In all these cases the payments came from sources that could not possibly have been distributed among creditors. It might seem, indeed, that the solicitude for equality was in such cases overzealous. In compositions, however, the motive is much stronger, since the bankrupt commonly procures the consideration divided, at least in part, from sources outside the estate. Obviously the measure of the dividend he offers will in part be determined by the "cost of the proceedings" in the language of section 12b. If the court permits him to include in that amount the several expenses of creditors, it diminishes pro tanto the available residue for dividends. Hence there is a stronger reason to apply the rule strictly in compositions than upon discharges, where the funds which will actually be distributed are already in the custody of the court and cannot be affected.

[2] This case may perhaps be thought to fall within an exception indicated obiter in Re M. & H. Gordon, supra; that is, the case where the efforts of the creditor have benefited the estate. In such a case, as it seems to me, the creditor so assisting establishes no claim against the estate, unless he acts at the request, express or implied, of the receiver, at least when there is a receiver. The court must look to the receiver as the adequate custodian, and the sole person who can establish any claims for administration, except such as are otherwise expressly authorized by statute. Any services rendered by those not authorized by the receiver must be deemed to be on the account of the creditors who undertake them. They are merely volunteered, and the estate, even though actually benefited, owes nothing for them. There is no hardship in this, but absolute justice. Any creditor may apply at any time to the court upon suggestion that the receiver should authorize him to assist, and the court can so direct. But to allow claims to be established for benefits, supposititious or actual, without some initial indication that the services upon which they are based will be the subject of a charge, is wrong in principle and mischievous in application. An estate in the custody of a court is not in need of voluntary services; there is no room for the doctrine of salvage. It is presumably being cared for adequately, and those who seek to impose upon it the benefit of their assistance do so at their own account, unless they secure some consent at the outset.

The motion is denied, without regard to the defense of laches. I need scarcely add that the disallowance of the item did not depend in the least upon any disapproval of the conduct of the committee, nor did it constitute any reflection upon their integrity.