[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 178 
All contracts or agreements which have for their object anything which is repugnant to justice, or against the general policy of the common law, or contrary to the provisions of any statute are void; and whenever a contract or agreement is entered into with a view to contravene any of these general principles, there is no form of words, however artfully introduced or omitted, which can prevent courts of law and equity from investigating the truth of the transaction; for ex turpicontractu actio non oritur — is a rule both in law and equity (1Com. on Cont. 30; 1 Story Eq. 296; Nellis v. Clark, 4Hill, 424). This principle is universally recognized and has often been applied in our own courts, to contracts which had for their object the perversions of the ordinary operations of the government; such as contracts to prevent a fair competition at legal sales by auction, contracts to prevent the administration of the insolvent laws, and contracts by which one person engages to pay another for his aid or influence in procuring an appointment to office (Gray v. Hook, 4 Comstock, 449).
It was correctly said by the learned judge in the court below in delivering the judgment of that court in this case, that the principle had long been established in this state by a series of cases, that a security given by a friend of an insolvent pending his application for a discharge from his debts, to induce a hostile creditor either to join in the petition for such discharge, or to withdraw his objections to its being granted, is void as being contrary to the policy of the insolvent law. The defence relied upon and offered to be proved, was that the testator, Samuel Leggett made the note upon which the action was brought, in consideration that the plaintiffs would withdraw their opposition to the discharge of Barney Corse, his son-in-law, who was then an applicant for a discharge from *Page 180 
his debts as a bankrupt under the late bankrupt act, and which they opposed as judgment creditors, and assign their judgments against Corse to him, immediately after a discharge to Corse should be granted. This evidence was objected to and excluded, to which the defendants excepted. The judge then charged the jury that the defendants defended on the ground that the consideration of the notes was in whole or in part an agreement that the opposing creditors, to whom the notes were given, would withdraw all opposition to the discharge of Corse, but that such facts formed no bar in law to the plaintiff's recovery on the notes, to which there was also an exception. It was remarked by the court below that all the cases to which it had been referred, arose under the statute for discharging an insolvent from his debt, upon the application of two-thirds of his creditors; and in all, the arrangement was made by the insolvent himself, or through his intervention: that our decisions were founded upon those made in England, under the bankrupt act, 5 Geo. II, by which the debtor was prevented from obtaining his certificate, unless four-fifths of his creditors united in a petition that it should be granted: that the act, also, made it unlawful for the bankrupt, or any person, to give any money or property to a creditor to induce him to sign the certificate: that under this act it was held in England, nearly a century ago, and such had been the law ever since, that a bond given by a relation of the bankrupt, to a creditor who would not otherwise sign the certificate, was illegal and void: that these discussions were in accordance with the positive enactment of the statute, but when a case arose, not within the provision, though against the policy of the act, Lord Tenterden said the security was not void and a bona fide
holder might recover upon it (Birch v. Jervis, 3 Carr Payne, 379).
The policy of the English bankrupt act, as well as our insolvent laws and our late bankrupt act is that a full and fair disclosure and surrender of the property of the debtor should be obtained; and that on such disclosure and surrender he should be discharged from his debts, and his creditors be *Page 181 
placed upon an equal footing, without preference except where liens existed, in respect to his property, thus subjected to the control and disposition of the law. Any transaction or arrangement which tends to defeat either of these objects is inconsistent with the policy of the law, illegal and void. The giving of the note as was offered to be proved in this case, and the agreement made, was inconsistent with the policy of the late bankrupt act. In the first place, it might and probably did place these creditors on more favorable grounds than the rest, in regard to the amount which they would obtain of their demands. In the second place, which is of greater importance, it was well calculated to suppress inquiry and to protect fraud and concealment from successful disclosure and development. The just presumption is, that the giving of the notes and making the arrangement were induced from apprehension that the investigation which these creditors were prepared and intended to make of the bankrupt's affairs, would result in defeating his discharge: if so, the transaction was fraudulent and deserves to be condemned.
To the remark, made by the court below, that all our cases to which it had been referred arose under the statute for discharging an insolvent from his debts upon the application of two-thirds of his creditors, and in all the arrangements were made by the insolvent or through his intervention; and that all the authorities were founded upon one or other of the grounds; that the payment or security made to the favored creditor was contrary to the provisions of the statute, detrimental to the rights or interests of third persons, oppressive upon the insolvent, or a fraud upon his other creditors; and that the late bankrupt act had no provision analogous to those upon which the learned judge had commented, contained in our insolvent law and the English bankrupt acts — it is a sufficient reply that the observation of Lord Mansfield in Smith v. Bromley (Douglass
696) shows that these principles are not the result of statute law. "It was a wrong in itself before any provision was made against it by statute."
The substance of the consideration for giving the notes, was *Page 182 
the withdrawal of the opposition of these creditors to the discharge of Corse their debtor and depending upon its being granted him under the bankrupt act. In other words, this arrangement was to be carried out, if by the withdrawal of their opposition a discharge should be granted, and not otherwise. This, in my judgment, was an arrangement clearly against thepolicy of the act. It was a wrong in itself, and so it seems that the court below looked upon it; but on the ground that there was no provision against it contained in the act, upon the authority of Birch v. Jervis, supra, it was held not to make the notes void. Some stress was laid upon the fact, that no one under the bankrupt act was dependent on another, as each creditor might on proving his debt, oppose the discharge of the applicant and that the procuring the creditors in question to withdraw their opposition, did not effect the rights of others. This is true, but it does not go to the question. It affects the policy
of the bankrupt law as vitally when there is but one creditor opposing the discharge of a debtor, and that one is procured to withdraw his opposition as though there were many, and one only is induced to stop his opposition. It is the policy of the law, to obtain a full and fair disclosure and surrender of the property of the debtor, which the withdrawal of the opposition of one creditor, if there be no other, tends to defeat. That principle governed in the case of Payne v. Eden, 3 CainesRep. 212. The note on which the suit was brought and declared to be void was given to the last of the petitioning creditors, and who signed the insolvent's petition after there was a sufficiency in number and value to exonerate the debtor. In the case of Waite v. Harper 2 John. 386 this promise was to pay the cost of an action in consideration of the plaintiff's not opposing the defendant's discharge under the insolvent law — it was held void — so a bond given to procure, upon the like consideration, certain notes for the plaintiff it was held could not be enforced (Bruce v. Lee, 4 John. 410). In Yeomans
v. Chatterton, 9 John. 295, a note of a third person given to a creditor to induce him to subscribe a petition for an insolvent's discharge, it was held could not be recovered. In *Page 183 
all these cases, the instrument on which the action was brought was held void in its creation. Therefore a transfer to an innocent endorsee of such paper would not defeat the policy of the law. It would be deemed void even in such hands. The same principle was sustained in Wiggins v. Bush, 12 John 306, and in Tuxbury v. Miller, 19 John 311. In the latter case a bond had been given as a reward to the plaintiff for not opposing the discharge of the insolvent. The court said, the transaction implies that there was good ground for opposition, and that if such opposition had not been withheld, the insolvent could not have legally obtained his discharge. Such bargains, it was said, were against public policy and the true intent of the act; for they tend to facilitate fraud, by screening it from scrutiny.
In my judgment, it is of no consequence that the arrangement was made between the creditors of this bankrupt and a third person without the intervention or knowledge of the bankrupt. The consideration of the notes, was illegal, it was the price of an act wrong in itself, an inducement to contravene a great principle of public policy (Nerot v. Wallace, 3 Term Rep. 17; Holland v. Palmer, 1 Bos. and Pul. 95).
Lord Tenterden, in Burch v. Jervis (3 Carr and Payne
380), referred to by the court below, it is true, at nisi prius, did hold, that a bill given, not to induce the party to whom given to sign the certificate, but merely to keep him from taking any step to oppose the defendant, the drawee, from getting his certificate, was good in the hands of the plaintiff a bona fide holder. It is not however, necessary to inquire whether that decision is not in opposition to a series adjudged cases in the courts of England. It is enough that it is in conflict with many adjudged cases in our own courts, where it has been uniformly held that negotiable paper given upon such a consideration was illegal and void, and being so could not be enforced by a bonafide holder.
I will, however, refer to the case of Jackson v. Dawson, 4Barn. and Ald. 692, which I think stands opposed to the principle as held in Birch v. Jervis: there an insolvent debtor having *Page 184 
petitioned the insolvent court to be discharged under the act, a creditor gave notice of his intention to oppose him, on the ground that the debt was fraudulently contracted. To induce the latter to withdraw his opposition, the insolvent agreed to execute within three days after his discharge a warrant of attorney for the debt, and in the mean time to give a promissory note to a third person for the amount which was to be delivered up on the execution of the warrant of attorney. The insolvent was discharged, the note delivered up and the warrant of attorney executed, which the court set aside together with the judgment entered upon it, on the ground that the agreement on which this was founded was contrary to the policy of the insolvent act. The judgment should be reversed and a new trial granted, costs to abide the event.