WILLIAM R. BARR AND ANOTHER, APPELLANTS, *v.* THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, RESPONDENT.

*A contract of lease between railroad corporations, where a number of the directors are the same in each company, is void — remedy of a stockholder of the leased road.*

Where a lease of its road is made by one railroad company to another, and four of the directors of one company are directors in the other, and at the meeting at which the resolution is passed authorizing the leasing of the former road it does not appear that these directors, or either of them, were absent from the meeting or dissented from its adoption, a stockholder of the leased road cannot maintain an action to compel the company, which accepted the lease thereof under these circumstances, to pay the rent agreed to be paid therefor.

As, under such circumstances, the directors in the leased road are instrumental, so far as their action goes, in bringing about this obligation on the part of the leasing road, in which they were also directors, the lease is void.

The law, relating to the rescission of agreements fraudulently induced, has no application to such a case, as the stockholder's inability to maintain the action does not depend upon the circumstance that no formal rescission of the lease has ever been made by either road, but upon the fact that the agreement itself creates no binding obligation; and for that reason no rescission of it was required.

The agreement to pay such rental cannot be enforced, because of the fact that the leasing road has retained possession of and continued to operate the road of the other company; the only remedy which the leased road or its stockholders have, lies in an action for an accounting against the leasing corporation for the earnings of the leased road.

APPEAL by the plaintiffs from a judgment, rendered at the New York Special Term, dismissing the plaintiffs' complaint upon the merits, and entered in the office of the clerk of the county of New York on the 3d day of October, 1888.

*Elihu Root* and *Stephen B. Clarke*, for the appellants.

*W. W. MacFarland,* for the respondent.

DANIELS, J. :

The action was brought by the plaintiffs as owners of shares of stock in the Suspension Bridge and Erie Junction Railroad Company, whose railroad connected the Erie Railroad, at Buffalo, with the Great Western Railroad of Canada, at Suspension bridge, to enforce the performance of a lease made between that company and

the Erie Railway Company, and for the payment of the rent reserved in the lease.   Both of these companies had passed under substantially the same management which was indentical in the way of interest.   And for that reason proceedings by the Suspension Bridge and Erie Junction Railroad Company had not been taken to secure the payment of the entire rental reserved in the lease.   So much of it as had not been paid was required to make the dividend on the stock of the Suspension Bridge Company, which the plaintiffs claim should be made.   The Erie Railway Company had passed out of existence before the suit was commenced, and the receiver of its property had, pursuant to a judgment and sale under a mortgage foreclosure, transferred his possession to the defendant, the New York, Lake Erie and Western Railroad Company.   That company, under the reorganization pursuant to the sale, had become charged with the performance of this preceding obligation of the Erie Railway Company, and of the receiver, so far as he became bound to perform it.   The lease, upon whose validity the right of the plaintiffs to maintain the action depended, was executed by the Erie Railway Company and the Suspension Bridge and Erie Junction Railroad Company, on the 13th of July, 1870.   And it leased the road of the latter company to the former, for whose business it had been constructed, with all its rights, franchises, privileges and estate, for the period of its corporate existence, which was the term of five hundred years.   The Erie Railway Company, in consideration of the lease, agreed to pay, by way of rent, an amount equal to thirty per cent of the gross earnings of the leased road, not to be less than $52,500 dollars semi-annually.   This rental corresponded in amount with the interest which would accrue on the bonds which the Suspension Bridge and Erie Junction Railroad Company had, by a resolution of its board of directors, adopted on the 28th of May, 1870, resolved to issue, amounting to the sum of $1,000,000, and to an equal dividend upon the stock of the same company, which was not to exceed the sum of $500,000.   The rental was intended to be used in making those payments, and it was paid, as it was stipulated for by the lease, for about two years after it was executed.   But subsequent to that time no more than the sum of $70,000 a year has been paid, which was necessary to pay the interest upon the $1,000,000, in amount of the bonds of the Suspension Bridge and

Erie Junction Railroad Company. The interest on those bonds had been guaranteed by the Erie Railway Company, and to meet and perform the terms of this guaranty the appropriation of the sum of $70,000 annually had become necessary. The latter company had also guaranteed the payment of a semi-annual dividend of three and a half per cent on the stock of the Suspension Bridge and Erie Junction Railroad Company, but all the shares of this stock were afterwards acquired by the Erie Railway Company by purchase, except those belonging to the plaintiffs and a small number of other shares. The New York, Lake Erie and Western Railroad Company justified the omission and refusal to pay the additional rental on the ground that the obligation to pay it had been illegally entered into, and was opposed to the policy of the law.

The foundation upon which this objection rested was the identity, to a certain extent, of the directors in the Suspension Bridge and Erie Junction Railroad Company and the Erie Railway Company, and the interest of at least four of these common directors in the stock and bonds of the Suspension Bridge and Erie Junction Railroad Company, which was to be promoted by the payment of the proportionate part of the rental, reserved in the lease now under consideration. Prior to the time when the lease was made, a contract was made and executed by the directors of the Suspension Bridge and Erie Junction Railway Company to build its railroad and receive therefor the $1,000,000 in its bonds, and $500,000 in its stock. This contract was subscribed by these parties on the 18th of May, 1870. But nothing seems to have been done under this agreement. For on the 7th of June, 1870, the company entered into an agreement with Mortimer Smith to build and construct the railway for the same consideration, and on the same day an agreement was made by the directors of the Suspension Bridge and Erie Junction Railroad Company with Smith to purchase and receive from him the stock and bonds already mentioned, as he should receive them from the Suspension Bridge and Erie Junction Railroad Company, and to pay him therefor, in monthly payments, the amount of money actually expended on his contract, proportionately corresponding to the bonds and stock received. These four persons, viz., James Fisk, Jr., Henry Thompson, Hugh Smith and William M. Tweed, who were directors in each of the companies, were parties

to and subscribed this agreement. And on the 27th of June, 1870, Mortimer Smith assigned to them and others his contract for the construction of the railway, by which they became entitled, for the performance of his agreement, to the bonds and stock which would otherwise have been delivered to him. And it was after these persons had, in this manner, become entitled to proportionate parts of the stocks and bonds of the Suspension Bridge and Erie Railroad Company, that the lease in controversy was executed by the Erie Railway Company.

Before the assignment of this contract by Smith on the 8th of June, 1870, a special meeting of the directors of the Erie Railway Company was held, at which a resolution was adopted authorizing the president of the company to execute, under its corporate seal, all contracts necessary for the lease of the road of the Suspension Bridge and Erie Junction Railroad Company, and to equip and run the same, etc. And it does not appear that either one of the directors of the company was absent from this meeting or dissented from the adoption of this resolution.

The cost of building and constructing the railroad was about $850,000, leaving to the parties agreeing to receive the million dollars in bonds guaranteed by the Erie Railway Company, through the completion of their agreement, a net gain of about $150,000, together with the $500,000 in stock. These directors were, accordingly, interested in obtaining the lease from the Erie Railway Company, which, it has been insisted, as the ground of this action, that the New York, Lake Erie and Western Railroad Company should be obliged to perform, by the payment of the full amount of rent reserved in it. They were instrumental, so far as their action extended, in bringing about the creation of this obligation, and, to the extent to which it afforded or would secure profit and advantage to them, it interfered with and prevented the disinterested performance of their duty to the Erie Railway Company, and imposed an obligation upon that company for their benefit. And, as they were directors in that company, as well as in the Suspension Bridge and Erie Junction Railroad Company, they were disabled from creating, or contributing, by their action, to the creation of this obligation; for directors of a corporation sustain the substantial relations to it of trustees, who are bound to devote

themselves disinterestedly to the advancement of the interests and prosperity of the company. They have no right, legally or morally, to contribute to the creation of an obligation on the part of the corporation they represent, which shall directly or indirectly result in a profit or advantage to themselves. But they are required to be governed solely by the motive of doing that which will best promote the prosperity and interest of the corporation whose affairs they are selected to manage. If they fail to observe this obligation, the law will not speculate to ascertain whether the company whose interests may be affected in this manner by its directors has been actually injured or not. But it will condemn the contract or obligation brought about in this manner, and prevent these persons, and all others claiming its benefit or advantage under them, or from their acts, from maintaining or enforcing the agreement.

This action can be no otherwise sustained than by maintaining the validity of this lease, and justifying the misconduct of these directors in the way of imposing a burden upon the corporation represented by them for their own benefit; and that the courts will not do, to aid and assist stockholders in another company claiming to be entitled through the misconduct of the common directors to the advantages of such a contract as this action has been founded upon. This general subject was examined, and the rule sustained as broadly as it has been stated in *Munson* v. *Syracuse, etc., Railroad Company* (103 N. Y., 58) and, also, in *Wardell* v. *Railroad Company* (103 U. S., 651). An agreement entered into and brought into existence, as this lease was, is directly condemned by the rule which these authorities sustain. And it not only disables the Suspension Bridge and Erie Junction Railroad Company from enforcing it against the Erie Railway Company and its successor, but the same disability attached to the plaintiffs, as stockholders in the former company, whose rights alone they have undertaken to enforce, to maintain this action. They stand in the position of this company, and can obtain no other or greater advantages than the company itself was entitled to in the way of enforcing the payment of this rental. The contract was in conflict with the law, as it has been constantly enforced against trustees, who are not permitted to deal for their own benefit with the subject of the trust. Agreements

entered into, or transactions consummated for that object, have constantly and uniformly been condemned. And where a contract may be entered into by the directors of a corporation, which is offensive to this principle of the law, there no action can be maintained upon it, but it stands precisely the same as all other illegal agreements, which the courts will not aid the parties or their privies in enforcing. (*Bell* v. *Leggett*, 3 Seld., 176; *Sedgwick* v. *Stanton*, 14 N. Y., 289.)

The law relating to the rescission of agreements fraudulently induced has no application to this case; for the plaintiffs' disability to maintain the action does not depend upon the circumstance that no formal rescission of the lease has ever been made, either by the Erie Railway Company or the New York, Lake Erie and Western Railroad Company. The agreement itself created no binding obligation; and, for that reason, no rescission of it was required to entitle the parties proceeded against to avail themselves of this and the New York, Lake Erie and Western Railroad Company as advantage.

Neither can the agreement to pay this rental be enforced because of the fact that the Erie Railway Company and its receiver, his successor, have retained possession and continued to operate the railroad of the Suspension Bridge and Erie Junction Company. For the principle which has been applied upon the force of that circumstance securing the performance of the obligation of the other party, entered into without actual authority, can have no force or effect over this controversy. Where the sole objection is that an agreement is entered into by a corporation, without authority, it is bound to pay the equivalent of the advantage secured by it, so long as that advantage is enjoyed under the agreement. But this case does not rest upon an agreement made extrinsic to the authority of the railroad companies. Each company did have the power to enter into this contract. But it is because of the manner in which it was brought about by the co-operation of the common directors, who were acting largely for the promotion of their interests in the creation of this agreement, that the law interferes and pronounces its condemnation upon it. The agreement itself, as a contract, is incapable of performance through the instrumentality of courts of justice; and the only remedy which either the Suspension Bridge and Erie Junction

Railroad Company or its stockholders have is an action for an accounting against the New York, Lake Erie and Western Railroad Company for the earnings of the railroad itself. That does not appear to have been required; and if it had been, upon the trial of the action, no ground to support it was presented by the evidence. For the $70,000 a year paid for the use of the railroad appears to have exceeded the amount of its earnings, for which the New York, Lake Erie and Western Railroad Company would be bound to account.

The judgment should, therefore, be affirmed, with costs.

VAN BRUNT, P. J., concurred.

Judgment affirmed, with costs.