EMILE MEYER, Appellant, $\bar{v}$. SAMUEL E. PRICE, Respondent.

(Argued February 14, 1929; decided March 19, 1929.)

*Hugart F. Norman* for appellant. The agreement sued upon was a valid and subsisting obligation; it was, therefore, error for the trial court to dismiss the complaint at the close of plaintiff's case. (*Zavelo* v. *Reeves*, 227 U. S. 625; *Yonkers Fur Dressing Co.* v. *Royal Ins. Co.*, 247 N. Y. 435; *Weil* v. *Neary*, 22 Fed. Rep. [2d] 893; *Hynes* v. *N. Y. C. R. R. Co.*, 231 N. Y. 229; *Wood* v. *Duff-Gordon*, 222 N. Y. 88; *Ciocca-Lombardi Wine Co., Inc.*, v. *Fucini*, 204 App. Div. 392; 236 N. Y. 584; *Lorillard* v. *Clyde*, 86 N. Y. 384; *Weber* v. *American Union Bank*, 221 App. Div. 94; *Kavanaugh* v. *McIntyre*, 210 N. Y. 175; 242 U. S. 138; *Fasulo* v. *United States*, 272 U. S. 620.) The court erred in its exclusion of evidence. (3 Freeman on Judgments [1925 ed.], p. 3027, § 1475; 2 Collier on Bankruptcy [13th ed.], 1186; *Matter of Menzin*, 238 Fed. Rep. 773; *Friend* v. *Talcott*, 228 U. S. 27; *Bay State Milling Co.* v. *Susman Feuer Co.*, 100 Atl. Rep. 19; *Whitney* v. *Dresser*, 200 U. S. 532.)

*James C. Paradise* and *Ralph O. L. Fay* for respondent. By the express provisions of the contract sued upon, plaintiff promised to forbear to act in bankruptcy. (Collier on Bankruptcy [13th ed.], 496; *Matter of Barragon,* 191 Fed. Rep. 247; *Matter of Wolff,* 11 Fed. Rep. [2d] 293; *Matter of Wood,* 283 Fed. Rep. 565; *Matter of Feuer,* 4 Fed. Rep. [2d] 892; *Royal Indemnity Co.* v. *Cooper,* 12 Am. Bank. Rep. [N. S.] 178; *Matter of Weitzman,* 11 Fed. Rep. [2d] 897; *Matter of Reed,* 191 Fed. Rep. 920; *Matter of Miller,* 27 Am. Bank. Rep. 606; *Friend* v. *Talcott,* 179 Fed. Rep. 676; 228 U. S. 27.) A contract, the consideration of which is a creditor's forbearance to act in bankruptcy, is against public policy, and void. (*Bell* v. *Leggett,* 7 N. Y. 176; *Wiggin & Wiggin* v. *Bush,* 12 Johns. 306; *Sharp* v. *Teese,* 9 N. J. L. 352; *Dexter* v. *Snow,* 66 Mass. 594; *Austin* v. *Markham,* 44 Ga. 161; *Paton* v. *Stewart,* 78 Ill. 481; *Blasdel* v. *Fowle,* 120 Mass. 447; *Rice* v. *Maxwell,* 21 Miss. 239; *Doucet* v. *Massachusetts B. & I. Co.,* 180 App. Div. 599.) A promise to pay money in consideration of forbearance to act in bankruptcy is illegal and void, in view of section 29-b(5) of the Bankruptcy Act. (*Hallet* v. *Novion,* 14· Johns. 273; *Griffith* v. *Wells,* 3 Den. 226; *Swords* v. *Owen,* 43 How. Pr. 176; *Parks* v. *Dold Packing Co.,* 6 Misc. Rep. 570; *Cowing* v. *Altman,* 1 T. & C. 494; *Swing* v. *Dayton,* 124 App. Div. 58; 196 N. Y. 503.) The trial court did not err in excluding the report of the special master and the order of the District Court from evidence. (Collier on Bankruptcy [13th ed.], 607.)

CRANE, J. Price, Guard & Co. were a copartnership doing a stock brokerage business. Emile Meyer was a customer of the firm. Price, Guard & Co. went into voluntary bankruptcy on February 5, 1925, and on February 24 the plaintiff filed a proof of his claim against the bankrupt estate in the sum of $54,000. This amount in the claim was stated to represent " the difference

between the market value of 1,480 shares of Radio Corporation of America Common A stock at the time of the filing of the voluntary petition in bankruptcy by the bankrupts and the amount claimed to be owing to claimant on account of said 1,480 shares of stock." From the statement of counsel on the trial I should infer that the brokerage house had contracted to purchase 1,480 shares for the plaintiff and had failed to do so.

On June 18, 1925, the defendant Samuel E. Price made an agreement with Emile Meyer, who was the largest creditor, to revive his claim to the extent of $13,000, which he agreed to pay in installments. Should default be made in paying any installment when due, the whole principal sum of $54,000 was to become due and payable. This agreement was made during the bankruptcy proceedings before the bankrupts' discharge. Default having been made in the payment of an installment due under this arrangement, the plaintiff has sued Samuel E. Price for the full amount of his claim, less the installments paid. The amount demanded is $48,467.12 with interest. The defendant has pleaded that this agreement was illegal and void as against public policy and by reason of having been induced by threats and illegal promises; that the plaintiff through his representative stated that he would oppose the defendant's discharge in bankruptcy by asserting that the defendant had been guilty of certain crimes in the conduct of his business unless defendant would guarantee that he, the plaintiff, would receive a substantial amount of his claim over and above the dividends payable in the bankruptcy proceeding.

The trial of the issues thus framed was very speedily disposed of. Plaintiff offered in evidence the agreement, his proof of claim, and rested. Thereupon, the complaint was dismissed as in violation of section 29-b (5) of the National Bankruptcy Act of 1898, as amended. This was the same as dismissing the complaint on the pleadings, the bankruptcy proceedings and the proof of claim being

conceded. The agreement was set forth in full and made part of the complaint.

Before considering the agreement in detail, let us recall to mind the law applicable to the situation. We may assume that the plaintiff's claim was one which could have been discharged in bankruptcy under section 14 and section 17 of the act. It is conceded that it was a debt, demand or claim provable in bankruptcy (Section 63), and as such, would have been discharged by a discharge in bankruptcy unless coming within the exception of section 17 (2), a claim arising out of a willful and malicious injury to the plaintiff's property. The conversion of property has been held since the amendment of this section to be included within this exception. (*McIntyre* v. *Kavanaugh*, 242 U. S. 138.)

There is no proof in this case of the conversion by the bankrupts of the plaintiff's property, and, therefore, I have said that we may, in fact we must, assume that the plaintiff's claim was a debt which could and would be discharged in bankruptcy unless the discharge was opposed and resisted for one of the reasons stated in section 14 of the Bankruptcy Act.

Even if we should assume, however, that the plaintiff's claim was not dischargeable because it was the result of the conversion of his property, yet he was in a position as a party in interest to oppose the discharge of the bankrupts and to press the objections enumerated in section 14. (*Matter of Feuer*, 4 Fed. Rep. [2d] 892.)

The plaintiff not only proved his claim in bankruptcy but by his agreement with the defendant reserved to himself the right to take the dividends which might be coming to him in the bankruptcy proceedings; these were excluded from the agreement. Whatever doubt may have heretofore existed as to the waiver by a claimant under such conditions of his right to sue later for the balance of his claim on a non-dischargeable debt has been set at rest by *Friend* v. *Talcott* (228 U. S. 27); *Matter*

*of Frank & Sons* (238 Fed. Rep. 773; also referred to as *Matter of Menzin*).

With this right to oppose the bankrupts' discharge, whether or not the claim be a dischargeable debt, any agreement to forbear to act in the bankruptcy proceeding or to withdraw or refrain from making any opposition to the bankrupts' discharge, or to refrain from making any move whatever in the proceedings which might impede or affect his discharge is not only against public policy, and, therefore, illegal and void. but may amount to an offense under section 29-b (5) of the Bankruptcy Act, which reads: " A person shall be punished, by imprisonment for a period not to exceed two years, upon conviction of the offense of having knowingly and fraudulently * * * (5) extorted or attempted to extort any money or property from any person as a consideration for acting or forbearing to act in bankruptcy proceedings." To make such an agreement unenforceable it is not necessary that the acts should constitute a criminal offense under this statute. The provision as quoted is the one applicable to this case, the agreement having been made in June of 1925. On May 27th of 1926, section 29-b (5) of the Bankruptcy Act was amended so as to read: " Received or attempted to obtain any money or property, remuneration, compensation, reward, advantage, or promise thereof from any person, for acting or forbearing to act in bankruptcy proceedings."

As I have said, however, irrespective of these provisions making certain agreements a criminal offense, they were also unenforceable at common law. Any arrangement in consideration of a creditor's withdrawal of his opposition to a bankrupt's discharge was illegal as against public policy and the salutary purposes of the insolvent or bankruptcy laws. (*Bell* v. *Leggett*, 7 N. Y. 176; *Wiggin & Wiggin* v. *Bush*, 12 Johns. 306.) In *Blasdel* v. *Fowle* (120 Mass. 447) the creditor gave his vote in favor of Fowle's discharge in bankruptcy upon

an agreement that his debt less the dividend should be paid in full as if there had been no discharge. The court held that the agreement and the instrument given to secure it were illegal and void at common law, as well as contrary to the purposes of the Bankruptcy Act. The same was held in 1899 in *Matter of Dietz* (97 Fed. Rep. 563) Judge Brown saying: "There is no doubt that if the opposition of the creditor is bought off through the procurement or privity of the bankrupt, it is such fraud upon the act as would warrant vacating the discharge, the fact itself being *prima facie* evidence that the bankrupt was not entitled to it," citing the case of *Bell* v. *Leggett* (*supra*).

All agreements, however, by a bankrupt to pay a creditor in full are not illegal. The illegality exists in the creditor undertaking to refrain from making some move in the bankruptcy proceedings or to withdraw from some action already taken which may impede or prevent the discharge of the bankrupt. The law desires and encourages a full and free exposure and revelation of all the bankrupt's acts, conduct and property. Any agreement whereby a creditor undertakes to keep silent or inactive when his word or deed might assist the purposes of the bankruptcy proceedings is illegal. When, however, this element is lacking and the bankrupt merely revives his debt by a promise after bankruptcy to pay his creditor, the new agreement, whether based upon the moral or a further consideration is enforceable. This was decided in *Zavelo* v. *Reeves* (227 U. S. 625, 629), the court saying: "It is settled, however, that a discharge, while releasing the bankrupt from legal liability to pay a debt that was provable in the bankruptcy, leaves him under a moral obligation that is sufficient to support a new promise to pay the debt. And in reason, as well as by the greater weight of authority, the date of the new promise is immaterial. * * * And so, under other bankrupt acts, it has been commonly held that a promise

to pay a provable debt, notwithstanding the discharge, is as effectual when made after the filing of the petition and before the discharge as if made after the discharge."

Into which of these classes must we place the agreement in question? Does it fall within the illegal class, as above described, or is it an innocent agreement by a debtor to pay a portion of his debt after he has gone into bankruptcy? We must now look a little further into the agreement.

It is in the form of a letter written by Samuel E. Price, signed and sealed and accepted under seal by Emile Meyer, the creditor. The recitals refer to the bankruptcy proceedings of Price, Guard & Co., of which Samuel Price was a member, and " the indebtedness owing by me to you amounting to $56,467.12." Price then promises and agrees to settle the indebtedness for the sum of $13,000 payable in installments at the times therein stated, and provides that should any default be made, the whole sum of $56,467.12 shall at the option of Meyer become due and payable. The following paragraph has cast doubt upon the validity of this agreement and given rise to this litigation. " It is further understood and agreed that in any application for discharge in bankruptcy which I may make, and have granted, that notwithstanding the same you are not in any way or manner releasing or surrendering any of your rights or remedies against the firm of Price, Guard & Co. or myself, it being distinctly understood that in applying for said discharge and obtaining the same that you are in no way or manner waiving or relinquishing any rights or remedies against the said firm or against me by reason of the making and delivery of this agreement, it being distinctly understood that so long as I am not in default in carrying out and observing the agreement hereinbefore set forth, you are not to institute or take any proceeding with reference to your claim of Fifty-six Thousand Four Hundred Sixty-seven and 12/100 ($56,467.12) Dollars." The dividends

and securities obtained in reclamation proceedings are excluded from the agreement.

This action is on the agreement for the full amount of the indebtedness because of the default in the payment of an installment. Is the agreement illegal on its face? This depends upon whether Meyer agreed not to make any move in the bankruptcy proceedings, that is, agreed to take no steps to oppose Price's discharge in bankruptcy. If this is what the agreement means it is illegal and void.

What the exact nature of Meyer's claim was does not appear in the record. This I have stated above. It may have been an ordinary debt arising out of contract, or a tort claim as for conversion not dischargeable in bankruptcy. If it were dischargeable, then as I have also said, a promise by the bankrupt to pay his claim or a portion of it would not be illegal if the creditor merely extended the time in which to pay it. The moral obligation to pay his debts would sustain the promise. If, however, the claim was not dischargeable, the creditor could pursue his remedy after the discharge in bankruptcy and even after the receipt of dividends in the bankruptcy proceedings. To what did these parties refer when they stated, " you are not to institute or take any proceedings with reference to your claim? " This could not have referred to a dischargeable claim, as after a discharge in bankruptcy the creditor could take no proceedings to collect his claim. If, however, the claim was not dischargeable, then proceedings could be taken. Without knowing all the surrounding circumstances and the nature of Meyer's claim, it is almost impossible to say with any certainty to what these words refer. If there be two reasonable interpretations to an instrument, one making it illegal and the other legal, it is the duty of the courts to adopt the latter. (*Lorillard* v. *Clyde*, 86 N. Y. 384.)

From the surrounding circumstances, from the history of the transaction and from the nature of the claim,

it may be that Meyer agreed with Price not to oppose his discharge and that this agreement should have that interpretation. If so, it was illegal and void. The defendant in his answer has pleaded facts and circumstances which would indicate that such was the case. He was not afforded an opportunity to prove his defense; the court found it unnecessary. On the other hand, if there was a non-dischargeable claim and Meyer simply agreed not to take further proceedings in the courts to collect the claim after discharge in bankruptcy, and the agreement in no way related to the bankruptcy proceedings or to his, Meyer's, actions, or proceedings in the Bankruptcy Court, then it was legal and enforceable to the extent at least of the amount due on the claim. Whatever dividends he may have received, if any, must be deducted, should it develop on another trial that this is a legal contract.

Our determination is that in view of all the circumstances the court cannot declare this contract illegal on its face, and that all the evidence should be taken bearing upon the question of the intent and purpose in making it, and whether or not it is tainted with illegality because Meyer either personally or through his representative agreed to make no move or take any steps detrimental to Price in the bankruptcy proceedings.

One other question remains which may or may not be vital to the case. The proof of claim was offered in evidence. The report of the special master and the order of the court made thereon was excluded. In so far as the report and the order adjudicated the property to be returned to the plaintiff in the reclamation proceedings, it was *res adjudicata* and receivable in evidence. The plaintiff, however, offered the report for the purpose of showing that the debt was not dischargeable in bankruptcy because of conversion. The report of the master was made in reclamation proceedings, under section 70 of the Bankruptcy Act. This is a proceeding taken by

creditors to recover specific property to which they claim title. " The petition in such proceedings should contain allegations sufficient to sustain a complaint in trover and conversion, or such as are required by the strictest practice in an affidavit for replevin." (2 Collier on Bankruptcy [13th ed.], p. 1733.) Annexed to the record is the master's report as an exhibit for identification. It states the property or securities which the bankrupt has in his possession and which belonged to Meyer and the other claimants. It then contains a statement of the claimant's trading account showing the securities marked " long " as of the date of bankruptcy. Deducting the value of the securities in possession, the master strikes a balance and says: " Difference, being value of securities converted." The facts constituting the conversion do not appear. Whether this is a mere conclusion of the master or a loose use of words is uncertain. His duty was to determine the title to specific property. " I was appointed," says he in his report, " Special Master to hear, determine and report to this court the rights, title and interest, if any, in and to * * * the stocks * * * in the possession of the Trustee herein." I do not understand that he was to determine in this proceeding what claims were dischargeable or not dischargeable, pursuant to section 17 of the Bankruptcy Act.

The conversion which makes a claim non-dischargeable under that section must be an actual conversion, a willful injury to property. (See *McIntyre* v. *Kavanaugh*, 242 U. S. 138; *Wood* v. *Fisk*, 215 N. Y. 233.) Whether it would include constructive conversions where there was no actual fraud or wrong-doing or no moral turpitude in the breach of the contractual relations may be doubtful. (See 1 Collier on Bankruptcy [13th ed.], p. 607; vol. 2, p. 1186; 3 Freeman on Judgments [1925 ed.], p. 3027, sec. 1475.)

That this master's report should not be considered *res adjudicata* on the question of conversion is quite

evident from the facts as stated by counsel when offering it in evidence. He said: " The point is that this is not a dischargeable debt, and to show that at the time this settlement was made there were 1480 shares that we were entitled to, which this defendant had not purchased and did not have in his possession." On this statement the defendant brokerage house evidently had " bucketed " the plaintiff's order, that is, it entered upon the books a purchase which it never made. It contracted to buy and failed to perform the contract. Such acts may constitute a crime under our Penal Law, section 954, or section 390, but I never understood that they amounted to a conversion. A conversion assumes possession and a misappropriation to one's use. Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein. (*McPheters* v. *Page*, 83 Me. 234; *Woodman* v. *Hubbard*, 25 N. H.. 67.) But if the broker has never executed the contract he has not converted the stock which he did not buy although he may have converted the margin put up to buy the stock.

In our judgment, therefore, the master's report was not *res adjudicata* upon the question of conversion, or to be received as evidence on this point. It was properly excluded. It is necessary for us to decide this question, as the point has been raised, and upon a new trial the plaintiff, to establish the non-dischargeability of his claim, will offer and probably seek to rest upon this master's report. All the facts regarding this claim may be given in evidence. If there has been a conversion of the plaintiff's stock, the claim was non-dischargeable and the plaintiff could proceed in the State courts or in any other courts having jurisdiction to recover against the bankrupts for the conversion, even after their discharge in bankruptcy. It is his claim that the proceedings referred to in the agreement are such an action or law suit for a conversion. The nature of the claim, therefore, becomes material.

It must be established, however, and this is our holding by a proof of the facts and not merely by the meager report of the special master in the reclamation proceedings.

For the reasons here stated the judgment of the Appellate Division and that of the Trial Term should be reversed, and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgments reversed, etc.