Ada F. Wright, Appellee, v. John J. Stinger, Appellant.

Gen. No. 8,679.

Opinion filed January 16, 1933.

R. H. RADLEY, for appellant.

REN THURMAN, for appellee; JAMES ST. CERNY, of counsel.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This is a suit in assumpsit begun by Ada F. Wright on October 19, 1929, against John J. Stinger. A trial, beginning on February 15, 1932, resulted in a verdict for the appellee, fixing her damages at $1,591.75.

The first count of the declaration is based on a note dated February 4, 1908, for the sum of $1,661.75, payable to Ada F. Wright, on or before three years after date, with interest at five per cent per annum, and signed by the defendant, John J. Stinger. There are indorsements of two payments on the back of this note. The first indorsement is for $50 under date of May, 1928. This indorsement was made by the plaintiff, who admits that after making it, she placed the figure seven across the figure eight so that it would appear the payment was made in 1927 instead of 1928. The indorsement shows the change in date. The other indorsement of payment is $20 under date of May 20, 1929. Common counts were filed with the count on the note. Before the trial it was stipulated that the appellee would rely on the note.

Appellant filed the plea of a general issue and three special pleas. The first special plea sets up the 10-year statute of limitations, the second the five-year statute of limitations, and the third, discharge in bankruptcy in 1915. Appellee joined issue on the plea of the general issue, and replied to the first special plea that the appellant had made payments on the note within 10

years prior to the beginning of the suit; to the second special plea that the appellant had made payments on the note within five years prior to the beginning of the suit; to the third special plea, that is, to the plea of discharge in bankruptcy, appellee replied that since the discharge in bankruptcy October 1, 1915, appellant had promised to pay the note. Appellant rejoined to each of these replications denying the payments and denying the promise to pay.

The note on its face is outlawed. To remove the bar of the statute it was necessary for appellee to prove that a payment or payments had been made by the appellant on the note within 10 years prior to the beginning of the suit under such circumstances as would indicate the intention to pay the full amount. To remove the bar of the discharge in bankruptcy it was necessary for appellee to prove an oral or written promise to pay.

It is the contention of appellant that at no time since his discharge in bankruptcy in 1915 has he made any payment on this note, and that at no time since then has he ever promised to pay it or any part of it.

Appellee, Ada F. Wright, testified that she lived in Chillicothe, Illinois, and that appellant lived on the Caterpillar Trail about two miles north of East Peoria, and that the distance between her home and his home is about 23 miles. She stated that on May 18, 1927, she drove to the appellant's house for the purpose of trying to collect something on the note. She did not take the note with her. She testified that at her request Stinger paid her $50 to be applied on the note; that she went home and the next day indorsed the payment on the back of the note. She testified that on May 20, 1929, she again went to Mr. Stinger's house for the purpose of collecting something on the note. She did not take the note with her. She says that Stinger at that time paid her $20 to be applied on the

note and that she went home and indorsed the payment on the back of the note the next day.

There was a trial by jury, a verdict and judgment for appellee, and appellant has brought the record to this court by appeal for review.

Appellant's chief contention is that the verdict is against the manifest weight of the evidence. As to the proofs, it was shown by appellee that on May 18, 1927, appellee and her son drove to the home of the appellant, and while there she asked appellant to pay her $50 on the note, as she needed the money very badly to make a payment on the mortgage on her home. In compliance with this request appellant on that date gave her his check for $50 and just before she left his home he requested her to sign a receipt for such payment. This supposed receipt was prepared by the appellant and laid on a table in his home for her signature. The evidence shows that this proceeding was between two aged people who had been close friends for a great many years, and the appellee was probably justified in signing any paper, relying upon the representation of her old friend as to the nature of such instrument. Appellee is an old lady with impaired eyesight, and at the time this supposed receipt was executed by her there was a storm approaching and it had become very cloudy and dark. Appellee was at least 23 miles from home and very anxious to get started homeward in order to avoid being caught in a storm. She testified in regard to signing this paper as follows:

"He wanted me to sign a receipt, and I signed something, and the storm was coming on so quickly that we got out of there in about a half a minute afterwards; if we hadn't we would have been at Stinger's for the next three or four days."

Appellee's apprehension about the storm was fully justified, as on her way home the car in which she was

riding became stalled in water on the road and remained so for over two hours before being pulled out by a truck. Because of the severity of the storm, the facts and circumstances regarding the payment of the $50 and the signing of a paper thereafter, are very vivid in the mind of appellee. There is no denial by appellant regarding the climatic conditions or what occurred at the time appellee signed the supposed receipt. The appellant furnishes the concrete evidence that she did receive from him on that date the sum of $50 by introducing the check in evidence.

After the payment of $50 to be applied on the note, appellee and appellant continued to visit back and forth. Amelia Oetzel, a niece of the appellee, was with her on various occasions when she visited the appellant at his home, and on all those occasions the matter of the note was discussed between appellee and appellant. This niece testified that on each of such occasions the appellant unqualifiedly promised appellee to pay the note. She further testified that since this suit was started she was at the home of the appellant with appellee in regard to seeing whether she could rent his place for the purpose of serving chicken dinners, and on that occasion the appellant unqualifiedly promised to pay said note. It does not appear in the evidence why this promise was made after this suit had been filed, but it is inferred that he made this promise in order to placate the appellee and thereby cause a dismissal of her suit.

There is no denial in the evidence that the appellee and her niece were at the home of the appellant after this suit was filed for the purpose they testified. Appellant in his testimony merely makes a general denial that at any time after the year 1915 he made any promise to the appellee to pay said note.

Charles Wright, son of appellee, on May 18, 1927, heard appellant unqualifiedly promise to pay his

mother the note in question and on said date saw him make the $50 payment. The son further testifies that on May 18, 1927, some time after the payment of $50 was made and just before they left the appellant's home in a great hurry, the appellant asked appellee to sign a receipt for such payment. At that time the son was 18 years of age and in all probability if he had looked at the paper signed by his mother he would not have known the nature and effect of the same, but he testified that in the rush to leave he never looked at the paper signed by his mother, assuming it was a receipt as represented by the appellant.

The son, in testifying as to what occurred about two years after the payment on May 18, 1927, stated that the appellant, after being requested for a payment on the note by his mother, stated he didn't have any money that day. That is practically the same interpretation put upon the answer of the appellant to his mother's request for a payment on the note that she testified to, but this son testifies that on said occasion he did see money change hands between his mother and the appellant, which corroborates the appellee in her testimony as to a payment being made on said date on the note by the appellant. The appellee and her son were at the home of the appellant the entire day, and it is quite reasonable to presume that this young man did not hear all the conversation that transpired between his mother and the appellant, although he did observe an actual payment being made.

There is no denial in the evidence that the appellee and her son were at the home of the appellant on May 20, 1929, and there is no denial that such a conversation as related by the appellee and her son did take place. The appellant merely denies the fact that he made a payment of $20 on said date to the appellee to be applied on said note. All the other testimony in regard to this transaction is undenied.

On the proofs submitted by appellant it appears that the instrument which appellee had signed on May 18, 1927, supposing it to be a receipt, turns out to be a promissory note, by which the appellee promised to pay the appellant the sum of $50 in 30 days, but nothing of this was set out in the pleadings. Appellee had never been asked to pay the note. Appellee had never known she had given a note. On the day in question, during the threatening storm, appellee testifies she signed, without reading, what was laid before her as a receipt. Appellant denies all of the testimony of appellee and the other two witnesses.

The only issue in this case, except one, is an issue of fact. As to the law applicable to this case: "It is settled that a discharge in bankruptcy, while releasing the bankrupt from legal liability to pay a debt that was provable in the bankruptcy, leaves him under a moral obligation that is sufficient to support a new promise to pay the debt, and in reason, as well as by the greater weight of authority, the date of the new promise is immaterial; and so under other bankrupt acts it has been commonly held that a promise to pay a provable debt, notwithstanding the discharge, is as effectual when made after the filing of the petition, and before the discharge, as if made after the discharge." (*Zavelo v. Reeves*, 227 U. S. 625; *Meyer v. Price*, 250 N. Y. 370, 165 N. E. 814.)

A subsequent promise to pay a note barred by a discharge in bankruptcy removes the bar created by the discharge and renders it competent evidence under the common counts as an original cause of action. The promise after discharge need not be based on any new consideration and is not necessary to be in writing. (*Marshall v. Tracy*, 74 Ill. 379; *Katz v. Moessinger*, 110 Ill. 372; *St. John v. Stephenson*, 90 Ill. 82; *Stern v. Smith & Co.*, 225 Ill. 430.)

While a new promise must be in writing to toll the running of the 10-year statute, a payment made upon a note is sufficient to toll the statute if established by parol evidence. (*Ott v. Flinspach,* 143 Ill. App. 61; *Hennessey v. Walsh,* 142 Ill. App. 237; *Willett v. Maxwell,* 169 Ill. 540; *Lowery v. Gear,* 32 Ill. 382.)

Where the evidence is conflicting, and the jury was properly instructed, the verdict will not be set aside on the ground that it is not supported by the evidence unless the verdict is clearly and manifestly against the weight of evidence. (*Lusk v. Throop,* 189 Ill. 127.) Where the evidence is sharply conflicting, courts rarely feel warranted in holding a verdict manifestly wrong. (*Hart v. Wilson,* 177 Ill. App. 510.)

Appellant assigns error because the court, after plaintiff had closed her case and the defendant had testified and produced the pretended note, permitted plaintiff (appellee) to reopen her main case and submit the testimony of Charles Wright and Amelia Oetzel. This was not error. It is within the discretion of the trial court to admit evidence for the plaintiff after defendant has rested, though the evidence is not proper in rebuttal. (*Maxwell v. Durkin,* 185 Ill. 546; *Sans Souci Park v. Anderson,* 202 Ill. App. 118; *Kersul v. Baldwin Piano Co.,* 208 Ill. App. 265; *People v. Lukoszus,* 242 Ill. 101; *Hartrich v. Hawes,* 202 Ill. 334.) Admission of evidence in rebuttal which is properly admissible in chief is within the sound discretion of the trial court. (*Floto v. Floto,* 233 Ill. 605; *Gray v. Bonfield,* 59 Ill. App. 381; *City of Marseilles v. Heister,* 142 Ill. App. 299; *Cleveland Seed Co. v. Moore,* 142 Ill. App. 615.)

Appellant complains that the verdict is less than it should have been, the jury not having figured or added any interest upon the note. Appellant cannot complain that the verdict is too small. *Heyman v. Heyman,* 210 Ill. 524.

There are some peculiar features to this case. The controversy arises between two old, close friends, who have known each other quite intimately for a period of approximately 40 years. The appellee is a widow residing at Chillicothe, Illinois. The appellant is 73 years old and has resided in Tazewell county for 62 years. The friendship existing between the two litigants has continued uninterruptedly from the time they became acquainted to the present time.

We have read all of the proofs and in connection with all of the circumstances in the case the proofs fully support the verdict.

The verdict and judgment of the circuit court of Tazewell county are affirmed.

*Affirmed.*