### BEULAH G. HOLLIDGE *vs.* COLONIAL TRUST COMPANY.

Norfolk. January 17, 1935. — February 27, 1935.

Present: RUGG, C.J., CROSBY, FIELD, LUMMUS, & QUA, JJ.

*Mortgage,* Of real estate: validity. *Contract,* Validity. *Duress. Bankruptcy. Assignment.*

One of the creditors of a bankrupt refused his assent to a composition offer of a certain percentage made by the bankrupt, and took the position that he should receive a certain larger percentage of his claim. Thereafter the wife of the bankrupt made an agreement to purchase the creditor's claim for a sum equivalent to the larger percentage thereof and, pursuant to the terms of the agreement, later gave the creditor a mortgage on her real estate as partial security for the purchase price. Upon appeal, with a report of the evidence, in a subsequent suit in equity by her against the creditor to enjoin foreclosure of the mortgage, it was *held,* that upon all the evidence, largely oral, findings by the trial judge that, although the bankrupt and his attorney, to her knowledge, were fearful at the time when the agreement was made that criminal proceedings possibly might be instituted against the bankrupt with respect to a false financial statement submitted to the creditor, no threats were made by the creditor to the bankrupt, his attorney, or his wife and that she, who was willing to assist the bankrupt in effecting a compromise with his creditors in order that he might continue in business, signed the agreement freely and under the advice of counsel and was not under duress in so doing, were not plainly wrong and must stand.

Even if the wife, in making the agreement and giving the mortgage above described, was actuated by fear induced by some one other than the creditor, that would not constitute duress on his part.

The creditor above mentioned had a right to make an assignment of his claim against the bankrupt during the bankruptcy proceedings.

Upon further findings in the suit in equity above described, that the agreement was made by the creditor openly; that the arrangement effected thereby was known to the officials of the bankruptcy court; that a creditors' committee were informed that the creditor was to receive a percentage of his claim larger than the percentage stated in the composition offer; and that the wife was not induced to make the

agreement by any statement by the creditor that he would act or forbear to act in the bankruptcy proceedings, there was no error in rulings that there was no violation of the national bankruptcy act and that the mortgage was not invalid.

BILL IN EQUITY, filed in the Superior Court on November 2, 1933, and afterwards amended, described in the opinion.

The suit was heard by *Williams*, J. Material findings are stated in the opinion.

The agreement between the plaintiff and the defendant of May 25, 1932, referred to in the opinion, provided that the defendant should sell and assign to the plaintiff its claim against the bankrupt in the bankruptcy proceedings, in the amount of $97,425.45; that the plaintiff should pay therefor $58,455.27 on or before July 1, 1932; that if, in negotiations pending between the plaintiff and a certain savings bank, the plaintiff should succeed in borrowing money upon a mortgage of her real estate, she should pay a certain sum to the defendant; that if she should not succeed in borrowing the money on or before July 1, 1932, she should give the defendant a mortgage upon her real estate "as security for the balance due, if any, from her at that time as the purchase price under this agreement"; that until full payment should have been made of the $58,455.27, the title to the defendant's claim against the bankrupt should remain in the defendant "as security for" the plaintiff's obligations, and the defendant should be entitled to receive all payments or distributions made in the bankruptcy proceedings on account of the claim, such payments and distributions to be applied by the defendant on account of the $58,455.27; and that upon payment of that sum in full, the defendant should execute and deliver to the plaintiff an assignment of the claim.

By order of the judge, a decree dismissing the bill was entered. The plaintiff appealed. The evidence was reported.

*L. S. Hamburger*, (*H. Leventhal* with him,) for the plaintiff.

*A. Brayton*, for the defendant.

CROSBY, J. This is a bill in equity by which the plaintiff seeks to enjoin the foreclosure of a mortgage on the grounds of duress, failure of consideration, threats, illegality under

the bankruptcy law, and upon many other grounds which need not be further recited in detail.

The plaintiff contends that, after her husband, C. Crawford Hollidge, who operated stores in Boston and New York, had filed a petition in bankruptcy on April 12, 1932, the defendant, which was a creditor of her husband, threatened to prosecute him criminally because of an alleged false balance sheet, and threatened to refuse to agree to an offer of compromise of forty-five per cent unless she purchased the defendant's claim for sixty per cent thereof or $58,455.27; and that by reason of such duress she purchased the defendant's claim by a conditional sales agreement, the purchase price to be secured by dividends to be paid in the bankruptcy proceedings, and by a mortgage on her home place. The trial judge found that there was no duress or other improper conduct practised by the defendant upon the plaintiff, and ruled that the mortgage given by her was not in violation of the bankruptcy act. In view of these and other findings the judge ordered that a final decree be entered dismissing the bill with costs. A final decree was entered in accordance with the order.

In the bankruptcy proceedings a large majority of the creditors of the plaintiff's husband, about four hundred in number, were represented by a creditors' committee in New York. These creditors were all merchandise creditors. The defendant bank was the only creditor for money loaned. The judge found that in May, 1932, a composition offer of forty-five per cent was made by Hollidge and the assents of a large number of the merchandise creditors were obtained. The defendant did not oppose the acceptance of the offer, nor did it endeavor to induce other creditors to refuse their assents, but was unwilling itself to assent. Its position was that the merchandise creditors presumably would benefit more by accepting the offer than would the bank, as the claims of these creditors included profits to be made as well as the cost of the goods sold, and in the event of Hollidge continuing in business these creditors would have the advantage of further business with Hollidge; the bank's claim, on the other hand, was for money actually

paid out. Furthermore the bank was disturbed by the revelation of a false statement made by one Kershaw, an accountant, which had been submitted to the bank by Hollidge, and was undecided what action it would take in reference to the same. It was found that there was a serious question as to the knowledge of Hollidge respecting its falsity at the time the statement was made; that Mr. Johnson, Hollidge's attorney, was distressed over the situation and feared the possibility of criminal proceedings against his client. Hollidge talked with his wife, the plaintiff. The plaintiff's home place had been purchased with money earned by Hollidge and stood in his wife's name. The defendant's officers had stated to the committee of creditors and to Hollidge or his attorney that it should receive sixty per cent of its claim, which would amount to about $58,000. The sixty per cent was determined by the bank on the theory that if there was an actual liquidation of the estate in bankruptcy there was a possibility of sixty per cent being realized by creditors. With forty-five per cent paid by composition, plus a payment in cash of about $15,000, it would be possible to meet the suggestion of the bank.

The trial judge made the further findings: An application was made by the plaintiff to a savings bank for a mortgage loan with the hope that approximately $15,000 could be raised; there was strong ground for believing that such a mortgage could be obtained. The president of the defendant at this time discussed the situation with the attorney of Hollidge; the matter of placing a mortgage with a third party was considered, and if that could not be done the defendant proposed to take a mortgage direct from the plaintiff and as consideration therefor to assign to her its claim against the bankrupt. On May 25, 1932, officers of the defendant met in the office of Hollidge's attorney and the plaintiff came in; she knew in a general way what her husband and his attorney desired to accomplish. She had no talk with the bank officers or with anyone representing them. Hollidge's attorney felt that she should have independent legal advice and referred her to an attorney who had an office in the same building with him. The plaintiff's

attorney, having previously conferred with the attorney of Hollidge, discussed the situation with her, and with his approval the plaintiff signed the agreement of May 25, 1932. She knew thereby that she was agreeing to give the mortgage, and she was willing to do so to assist her husband. She was and felt free to act in accordance with her best judgment, and was under no duress. No threats were made to her or in her presence as to any contemplated criminal proceedings against her husband. The general situation was apparent and she knew of the fears of her husband's attorney, and presumably of her husband. There had been some talk of the defendant advancing money to Hollidge on new collateral if the composition were effected, and she knew of the possibility of this being done. Later it became evident that Hollidge could not pay forty-five per cent in compromise with his creditors and a new offer of forty per cent was made, and under the advice of her attorney the plaintiff authorized the bank to waive the difference of five per cent. In accordance with the agreement of May 25, 1932, the plaintiff on July 22, 1932, executed the mortgage which was for $19,500, and it was signed by her husband and the composition was completed. The note accompanying the mortgage reads as follows: "FOR VALUE RECEIVED I promise to pay to Colonial Trust Company, a banking corporation duly organized under the laws of the State of New York and having an usual place of business at 57 William Street or order NINETEEN THOUSAND FIVE HUN-DRED . . . no/100 Dollars in one (1) year from this date, with interest semi-annually at the rate of six (6) per centum per annum, during said term, and for such further time as said principal sum, or any part thereof, shall remain unpaid." In January, 1933, the plaintiff paid the defendant the interest on the mortgage, having received the amount from her husband. Previously the defendant had refused to accept a check for this interest from a corporation which Hollidge had established to continue his business. The defendant advanced Hollidge $20,000 on new accounts receivable in order to make his full composition payments. The plaintiff gave the defendant a written guaranty for the

repayment of this sum with interest. All through the negotiations the bank had been frank as to its position: it had stated to Hollidge, and to the committee of creditors, that it was unwilling to assent to the composition offer. It did nothing positive to oppose the acceptance, and did not make any threats to Hollidge or his attorney. The creditors' committee were informed of the additional amount the bank was receiving, but were not told that this was to be done by a mortgage from the plaintiff. The committee did not object to what had been done. This information was not given to the creditors in general except as some of them may have been so advised by the committee. The judge further found that "The receiver and the referee in bankruptcy in Boston were told of the arrangement with the Hollidges. There was no concealment or attempted concealment on the part of the bank."

An examination of the evidence contained in the voluminous record fails to show that the trial judge was plainly wrong in the findings made by him. The evidence before him was largely the testimony of many witnesses given orally. "The duty of this court in these circumstances is settled and has been stated frequently. The evidence must be examined and the case decided according to the judgment of this court as to the facts, giving due weight to the findings of the judge; but his decision will not be overturned unless plainly wrong. The presumption in favor of the correctness of the decree appealed from and of the findings of fact made is peculiarly strong, because 'the judge who hears the testimony from the mouths of the witnesses . . . has better means of weighing the credibility of their conflicting statements than the full court can possibly have upon the printed record of their testimony.'" *Berman* v. *Coakley*, 257 Mass. 159, 162. See also *Kelley* v. *Jordan Marsh Co.* 278 Mass. 101, 107; *Bankers Trust Co.* v. *Dockham*, 279 Mass. 199, 200.

Where as here the case comes to this court upon appeal from a final decree, upon findings of material facts and a report of all the evidence, most of which was oral, the findings of the judge will stand unless plainly wrong.

The judge found that the defendant made no attempt to keep secret from the creditors the agreement of May 25, 1932. In executing the mortgage the plaintiff and her husband knew that as a result of giving the mortgage the bankrupt was going to secure a loan from the defendant for the purpose of effecting the composition. The finding of the judge that the execution of the agreement of May 25, 1932, was not induced by a statement by the defendant that it would act or forbear to act in the bankruptcy proceedings, and the ruling that the mortgage was not illegal, were not erroneous. If in entering into the agreement and in giving the mortgage the plaintiff was induced to do so by reason of any fear, as she contends, there is no evidence that such fear was induced by the creditors' committee or anyone else who was connected with the defendant bank. If she was actuated by fear induced by anyone other than the defendant, it did not constitute duress on the part of the defendant. *Fairbanks* v. *Snow*, 145 Mass. 153. *Lombard* v. *Lufkin*, 278 Mass. 263. The evidence warranted a finding that the plaintiff was willing to do what she could to assist her husband in effecting a compromise with his creditors in order that he might continue in business. She followed the advice of her attorney, who testified that at that time she appeared to act upon her own free will. Her requests 68, 69 and 70 were rightly denied since they were inconsistent with facts which justifiably were found by the judge. The right of a creditor to assign his claim during the proceedings in bankruptcy is recognized and permitted by the bankruptcy act. General Orders and Forms in Bankruptcy, XXI, 172 U. S. 653, 661. A bankrupt may rightly at any time between the filing of his petition and his discharge promise to pay a creditor in full, and such promise is enforceable. *Zavelo* v. *Reeves*, 227 U. S. 625. See also *Meyer* v. *Price*, 250 N. Y. 370. The Federal bankruptcy act, Act of July 1, 1898, c. 541, § 29, 30 U. S. Sts. at Large, 554, as amended by Act of May 27, 1926, c. 406, § 11, 44 U. S. Sts. at Large, 665, recites what acts are deemed illegal as follows: "having knowingly and fraudulently . . . (4) received any material amount of property from a bankrupt after the filing of the petition

with intent to defeat this Act; or (5) received or attempted to obtain any money or property, remuneration, compensation, reward, advantage, or promise thereof from any person, for acting or forbearing to act in bankruptcy proceedings." To make the transaction illegal there must be some secret or fraudulent act which shows that the agreement was made for the purpose of inducing the creditor to agree to act or forbear to act in the bankruptcy proceedings. *Meyer* v. *Price*, 250 N. Y. 370. In the case last cited the bankrupt, pending the proceedings, promised to pay the creditor an amount in addition to that which he would otherwise have been entitled to receive. The cases decided by this court cited by the plaintiff are distinguishable from the present case. In those cases it appeared that in consideration for the promise to pay money, the creditor promised to act or forbear to act in the bankruptcy proceedings. *Case* v. *Gerrish*, 15 Pick. 49. *Blasdel* v. *Fowle*, 120 Mass. 447. *Tirrell* v. *Freeman*, 139 Mass. 297.

It results that the findings of the trial judge that the plaintiff was not induced to execute the agreement and mortgage by duress, and that there was no violation of the bankruptcy act, were not plainly wrong.

The entry will be

*Final decree affirmed with costs.*